Edward BASS and Cary
L. Bass, Appellants,

v.

T. Delbert WALKER, Walker Sand, Inc., Ellington Dirt, Inc., Camille Butler, and Ed Robeau, Appellees.

No. 14–01–00532–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 6, 2003.

Kerry McMahon, Houston, for appellants.

Charles R. Dunn, David A. Carp, Ed Peine, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices ANDERSON and FROST.

### SUBSTITUTE OPINION

KEM THOMPSON FROST, Justice.

We overrule the motion for rehearing filed by appellants Edward Bass and Cary L. Bass. We withdraw the opinion issued in this case on November 7, 2002, and we issue the following opinion in its place.

Appellants Edward Bass and Cary L. Bass challenge the sufficiency of the evidence supporting the trial court's determination that they brought this derivative suit without reasonable cause. Because there was sufficient evidence that appellants filed suit without reasonable cause and because the trial court did not abuse its discretion in ordering them to pay appellees' expenses under the Texas Business Corporation Act, we affirm the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 1982, T. Delbert Walker, Ed Robeau, Travis Campbell, Dr. E.C. Butler, Dr. G.H. Barfield[1], and a group that included several members of the Bass family formed Ellington Dirt, Inc., for the purpose of acquiring two adjacent tracts of land in southeast Harris County ("the Property"). In that same year, Ellington Dirt purchased the Property and leased it to Walker Sand, Inc., under a 1982 lease entitled "Lease for the Purpose of Removal and Sale of Sand and Related Fill Material" ("the Original Lease"). At all material times, Delbert Walker was the principal stockholder of Walker Sand and the president of both Walker Sand and Ellington Dirt.

The Original Lease contained the following terms:

- The term of the lease was 15 years.
- During the first four years of the lease, Walker Sand would pay Ellington Dirt $0.50 per cubic yard for all sand, fill dirt, and topsoil removed from the Property.
- In the fifth year, this royalty amount would increase to $0.60 per cubic yard, and it would increase by five percent for each year thereafter.
- If Walker Sand failed to pay the royalties as specified in the lease, Ellington Dirt had the right to immediately terminate the lease, re-lease the Property, and, if it desired, bring suit against Walker Sand.
- If Walker Sand did not work the lease or move sand, fill dirt, or topsoil for a period of nine months, Ellington Dirt had the option to terminate the lease.

- Walker Sand agreed to excavate all material on the Property to a depth of 35 feet.
- After Walker Sand completed this excavation, Ellington Dirt would have the option to sell the Property to Walker Sand at fair market value or receive one-tenth of all revenues generated from the operation of a landfill on the Property.
- In connection with the landfill option, Walker Sand agreed to obtain any necessary permits and to comply with the laws applicable to the operation of landfills.

Approximately two years after the Original Lease was signed, a number of problems arose that impacted the operations. First, the economy suffered a downturn. Because of the adverse economic conditions and other factors, the Original Lease was not generating much income. In 1986, Ellington Dirt agreed not to escalate the royalties as provided in the lease. Delbert Walker testified that he told the shareholders of Ellington Dirt that circumstances made it unlikely that a landfill permit could be acquired for the Property. Ellington Dirt never excavated all material on the Property to a depth of 35 feet.

In 1989, the Basses[2] began to suspect that the Property was being used as a dump site. Edward Bass and Travis Campbell found concrete, rebar, pipe, tires, and other materials on the Property. At a shareholders' meeting in October of 1990, Edward Bass asked Walker about the apparent dumping on the Property. According to Bass, Walker initially denied it, but later stated that seven to ten acres

---

1. Dr. Barfield's shares were ultimately purchased by Walker.

2. In the statement-of-facts section of their brief, appellants state that they both filed this derivative suit on February 28, 1991. Appellees agree with this statement in their brief.

Therefore, we accept this statement as true. *See* TEX.R.APP. P. 38.1(f). Further, because appellants do not distinguish between Edward Bass and Cary Bass in their arguments on appeal, we will generally refer to appellants collectively as the "Basses."

of the Property had been used for dumping and that permits were unnecessary because he dumped only "dirt and crushed concrete." The Basses feared that the material dumped on the Property might be debris from a 1989 explosion at a Phillips Petroleum Plant and, therefore, might contain hazardous waste. Walker testified that he invited the Basses to inspect and test the Property, but instead, Edward Bass resigned from Ellington Dirt's board of directors, and thereafter the Basses filed this lawsuit. The dumping on the Property apparently ceased before the suit was filed in accordance with a resolution passed by the Ellington Dirt shareholders in December of 1990.

In February of 1991, Travis Campbell and the Basses filed this shareholder derivative suit on behalf of Ellington Dirt against Delbert Walker and Walker Sand. At all material times, the Basses were minority shareholders in Ellington Dirt. In their original petition, the Basses alleged derivative-action claims on behalf of Ellington Dirt against Walker and Walker Sand for "breaches of fiduciary duty, bad faith, and fraudulent business transactions." In their petition, the Basses alleged that the defendants "made use of the land, for Defendants' financial gain, without compensating the rightful owner of the land therefor" and that "[a]dditionally, such uses of the land have greatly impaired its market value and subjected the owners of the land to increased liability." They also asserted claims for negligence and fraud and requested exemplary damages in the amount of $500,000. The Basses made no mention of the Original Lease in their petition, nor did they assert any claim for breach of the Original Lease in their original pleading.

Several months after the Basses filed suit, the parties to the Original Lease amended it to provide, among other things, that the royalty payment would remain at $0.50 per cubic yard with no escalations ("the Amended Lease"). The Amended Lease, signed in October of 1991, further provided that Walker Sand would have the right, but not the duty, to excavate 93 acres of the Property to a depth of 35 feet and to move any unmarketable material without payment of royalty. Ellington Dirt approved this Amended Lease after Camille Butler[3] and Ed Robeau were elected as directors of the corporation. After this amendment, the Basses amended their pleadings to add Butler and Robeau as defendants, alleging, among other things, that Butler and Robeau breached their fiduciary duties as directors by approving the Amended Lease. Later, the Basses added Olshan Demolishing Company, Inc. and Phillips Petroleum Company as defendants and also asserted additional claims, including an allegation that Walker Sand breached the Original Lease. Appellees/defendants filed a counterclaim against the Basses and Campbell for expenses under article 5.14, section F, of the Texas Business Corporation Act ("article 5.14F").

This case first went to trial in May of 1996. On the second day of trial, Phillips and Olshan settled for $150,000, which went to Ellington Dirt, after deduction for certain fees and expenses. Before submitting the case to the jury, the trial court granted a directed verdict to Walker Sand on all claims except breach of the lease and negligence. The trial court also granted a directed verdict on all claims against Butler and Robeau. The jury considered the remaining issues and found

3. Butler acquired her shares in Ellington Dirt upon the death of her husband, Dr. E.C. Butler, one of the original investors.

Walker Sand breached the lease; however, the jury found the breach was excused. The jury found no breach of fiduciary duty on the part of Delbert Walker and no negligence on the part of Walker Sand. Finally, as to the counterclaim under article 5.14F, the jury found Campbell and the Basses brought this shareholder derivative suit without reasonable cause.

The parties agreed to try the amount of attorney's fees to the court. Based on its rulings and the jury's findings, the trial court entered judgment in favor of appellees on their counterclaim in the amount of $411,499. The Basses and Campbell appealed to this court. In an unpublished opinion, this court affirmed in part and reversed and remanded in part based on the following holdings: (1) the trial court, not the jury, must determine whether the Basses and Campbell filed this suit "without reasonable cause"; (2) the trial court's failure to conduct a bench trial regarding appellees' counterclaim was reversible error; (3) the trial court did not reversibly err when it overruled the plaintiffs' objections to the jury question regarding excuse of Walker Sand's breach; (4) there was sufficient evidence that Walker Sand was excused from performing under the Original Lease based on the Amended Lease; and (5) the trial court properly granted a directed verdict in favor of Butler and Robeau. *See Campbell v. Walker*, No. 14–96–01425–CV, 2000 WL 19143, at *3–*14 (Tex.App.-Houston [14th Dist.] Jan. 13, 2000, no pet.) (not designated for publication). This court remanded the case in part for a bench trial on the article 5.14F issues. *See id.* at *14.

On remand, Campbell settled with appellees for $100,000 and relinquishment of his stock. After conducting a bench trial, the trial court ruled in favor of appellees on their counterclaim, found the Basses had filed the derivative suit without reasonable cause, and awarded appellees a total of $311,499—the same amount of attorney's fees and expenses awarded in the first judgment minus the $100,000 settlement credit.

## ISSUES PRESENTED

On appeal, the Basses present the following issues:

- Did the trial court err in awarding attorney's fees under article 5.14F of the Texas Business Corporation Act because the Basses had "reasonable cause" to bring a shareholder derivative suit as a matter of law?
- Is the evidence legally sufficient or, alternatively, factually sufficient to support the trial court's finding that this shareholder derivative suit was brought "without reasonable cause" under article 5.14F of the Texas Business Corporation Act?
- Do the trial court's findings support its conclusion that the Basses brought this shareholder derivative suit "without reasonable cause" under article 5.14F of the Texas Business Corporation Act?
- Did the trial court err in failing to properly allocate all offsets and settlement credits to which the Basses were entitled?

## STANDARD OF REVIEW

Article 5.14F provides that, upon final judgment for one or more defendants and upon a finding that the plaintiffs brought suit against those defendants "without reasonable cause," the trial court "may ... require the plaintiff to pay expenses to such defendants." Act of May 26, 1973, 63d Leg., R.S., ch. 545, § 37, 1973 Tex. Gen. Laws 1486, 1508–09 (amended 1997) (current version at TEX. BUS. CORP. ACT ANN. art. 5.14J (1) (Vernon Supp. 2002)). Therefore, article 5.14F affords the trial court a measure of discretion in

deciding whether to award attorney's fees. *See Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex.1998); *Pace v. Jordan,* 999 S.W.2d 615, 625–26 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). Accordingly, we review the trial court's ruling on a request for expenses under article 5.14F for an abuse of discretion. *See Bocquet,* 972 S.W.2d at 20–21; *Pace,* 999 S.W.2d at 625–26.

■ Generally, the test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the trial court acted arbitrarily and unreasonably. *See McDaniel v. Yarbrough,* 898 S.W.2d 251, 253 (Tex.1995). However, under article 5.14F, the district court's discretion is limited by the requirement that the plaintiffs have brought suit without reasonable cause. *See* Act of May 26, 1973, 63d Leg., R.S., ch. 545, § 37, 1973 Tex. Gen. Laws at 1508–09; *Bocquet,* 972 S.W.2d at 20–21. Therefore, the trial court abuses its discretion if it awards expenses under article 5.14F without legally and factually sufficient evidence that the plaintiffs have brought suit without reasonable cause. *See Bocquet,* 972 S.W.2d at 20–21; *Weingarten Realty Investors v. Harris Cty. Appraisal Dist.,* 93 S.W.3d 280, 283 (Tex. App.-Houston [14th Dist.] 2002, no pet.); *Hunt v. Baldwin,* 68 S.W.3d 117, 135 n. 8 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Pace,* 999 S.W.2d at 625–26.

In conducting a legal-sufficiency analysis, we review the evidence in a light that tends to support the disputed findings and disregard all evidence and inferences to the contrary. *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex.2001). If more than a scintilla of evidence exists, it is legally sufficient. *Id.* More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Id.* at 782–83.

■ When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet,* 61 S.W.3d 599, 615–16 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Pascouet,* 61 S.W.3d at 616.

### ANALYSIS

### Did the trial court abuse its discretion by awarding expenses under article 5.14F?

#### *Preservation of Error*

■ The Basses complain on appeal that the trial court abused its discretion because there was legally and factually insufficient evidence that they brought suit without reasonable cause. Appellees assert the Basses failed to preserve error under Texas Rule of Appellate Procedure 33.1 because the Basses did not assert these complaints in the trial court. *See* TEX.R.APP. P. 33.1. We disagree. When appealing from a bench trial, an appellant is not required to preserve error in the trial court regarding complaints that the evidence was legally or factually insuffi-

cient. *See Renteria v. Trevino,* 79 S.W.3d 240, 241–42 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *O'Farrill Avila v. Gonzalez,* 974 S.W.2d 237, 248 (Tex.App.-San Antonio 1998, pet. denied). Furthermore, the Basses asserted these complaints in the trial court in their objections to the proposed findings of fact that the court later adopted. The Basses preserved error.

### Law–of–the–Case Argument

■ Appellees also assert that, under the law-of-the-case doctrine, the Basses cannot attack the legal sufficiency of the evidence because this court decided that issue against them in the first appeal in this case. We disagree. Although the appellants in the first appeal did challenge the legal sufficiency of the evidence supporting the jury's finding that the Basses had no reasonable cause to bring suit, this court did not rule on that issue in the first appeal. Because this court did not decide this issue in the first appeal, the law-of-the-case doctrine does not prevent the Basses from asserting the issue now. *See Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986).

### Merits of the Basses' First Two Issues

In the first two issues, the Basses assert that the trial court abused its discretion in awarding expenses under article 5.14F because there was legally or, in the alternative, factually insufficient evidence to support the trial court's finding that the Basses brought this suit without reasonable cause. As a preliminary matter, we must decide the legal standard to be applied to determine whether the Basses brought suit without reasonable cause under article 5.14F. This appears to be an issue of first impression in Texas.

The Basses assert that "without reasonable cause" should be interpreted as a subjective standard, requiring a finding that the plaintiff knew the suit was groundless at the time he filed it. In

support of this position, the Basses cite decisions construing the same language under New Mexico, North Carolina, and Tennessee law. *See Owen v. Modern Diversified Indus., Inc.,* 643 F.2d 441 (6th Cir.1981) (applying Tennessee law); *White v. Banes Co.,* 116 N.M. 611, 866 P.2d 339 (1993); *Lowder v. Doby,* 79 N.C.App. 501, 340 S.E.2d 487 (1986).

In *Lowder,* the plaintiffs asserted that "without reasonable cause" means filing a derivative action without "a 'reasonable belief' that there is a 'sound chance' that their claims may be sustained." *See Lowder,* 340 S.E.2d at 493. The *Lowder* court held that, presuming for the sake of argument that plaintiffs' legal standard was correct, plaintiffs still filed suit without reasonable cause. *See id.* at 493–95. The *Lowder* court did not decide what standard should be used for "without reasonable cause," and the court's analysis does not support the subjective standard proposed by the Basses. *See id.* Likewise, the *Owen* court held the trial court correctly construed the Tennessee statute in finding that plaintiff had brought suit without reasonable cause. *See Owen,* 643 F.2d at 444–45. The trial court had found that it should have been obvious to plaintiff that his derivative action lacked merit; however, the trial court expressly found that plaintiff did not bring the action in bad faith. *See id.* at 444. Again, the *Owen* court did not decide what standard should be used for "without reasonable cause," and the court's opinion does not support a subjective standard. *See id.* at 444–45.

The *White* case under New Mexico law does support the subjective standard advocated by the Basses. *See White,* 866 P.2d at 343–44. On the other hand, an Arizona case supports an objective standard by equating the "without reasonable cause" standard for derivative actions with the standard necessary to assess sanctions un-

der Rule 11 of the Federal Rules of Civil Procedure. *See Blumenthal v. Teets,* 155 Ariz. 123, 745 P.2d 181, 188–89 (Ct.App. 1987); *see also* FED.R.CIV.P. 11. In sum, the cases from other jurisdictions are split and do not offer strong guidance on this issue.

■ After considering the language of article 5.14F and the legal standards under other similar statutes, we adopt an objective standard and hold that a plaintiff acts without reasonable cause under article 5.14F if, at the time he brings suit: (1) plaintiff's claims in the lawsuit are not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; or (2) plaintiff's allegations in the suit are not well grounded in fact after reasonable inquiry. *See* TEX. BUS. CORP. ACT ANN. art. 5.14J (1)(c) (Vernon Supp.2002) (defining standard for requiring parties to pay the expenses of another party under amended Business Corporation Act that took effect on September 1, 1997 and that does not apply to this case [4]); TEX. CIV. PRAC. & REM.CODE § 10.001–.006 (describing circumstances under which trial court may order party to pay attorney's fees and expenses to another party as a sanction); TEX.R. CIV. P. 13 (defining "groundless"); *Randolph v. Walker,* 29 S.W.3d 271, 277–78 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (involving groundlessness under Texas Rule of Civil Procedure 13); *Selig v. BMW of N. Am., Inc.,* 832 S.W.2d 95, 103 (Tex.App.-Houston [14th Dist.]

1992, no writ) (involving groundlessness under DTPA).

■ Under this legal standard, we conclude that the evidence at trial was legally and factually sufficient to support the trial court's finding that the Basses brought suit without reasonable cause. The Basses assert there was "absolutely no evidence" to support this finding because (1) at the time they brought suit, Walker Sand had breached the Original Lease, as shown by the jury's finding that Walker Sand breached the Original Lease; (2) the Basses recovered $150,000 for Ellington Dirt as a result of settling their claims against Phillips and Olshan in this suit; (3) the Basses investigated the allegations in the original petition before bringing suit, as shown by various steps that they took to determine if materials from Phillips had been dumped on the Property; (4) before filing suit, the Basses reviewed the provisions of the Original Lease and consulted with three attorneys about the merits of this suit; (5) the Basses discussed concerns about the dumping of Phillips material on the Property with Robeau; and (6) the Basses sent a November 9, 1990 demand letter to Walker as agent for the board of directors.

■ As to Walker Sand's alleged breach of the Original Lease, the Basses argue that the parties had not yet amended the Original Lease when the Basses filed suit and that the breach the jury found therefore had not yet been excused. The Basses emphasize that their primary allegation

---

4. We are not applying the current article 5.14J of the Texas Business Corporation Act to this case, nor are we applying Chapter 10 of the Texas Civil Practice and Remedies Code, the DTPA, or Rule 13 of the Texas Rules of Civil Procedure. Rather, in determining the standard for "without reasonable cause" under article 5.14F, we consider these other statutes on the same or similar subject. *See Calvert v. Audio Center, Inc.,* 346 S.W.2d

420, 423 (Tex.Civ.App.-Austin 1961, writ ref'd n.r.e.) (holding court may consider amended statute in construing prior statute); *Texas Co. v. Schriewer,* 38 S.W.2d 141, 143 (Tex.Civ. App.-Waco 1931) (stating that, in construing a statute, courts may consider other statutes on the same or similar subject), *aff'd in part, rev'd in part on other grounds,* 53 S.W.2d 774 (Tex.Com.App.1932, holding approved).

was that Walker Sand had breached the Original Lease. We disagree. As previously noted, the original petition makes no reference to the Original Lease, nor does it contain any claim for breach of that lease. In the original petition, the Basses stated that Delbert Walker and Walker Sand had used the Property and allowed others to use the Property for their own financial gain, without compensating Ellington Dirt. The Basses also alleged that these uses of the Property had greatly impaired its market value and subjected the "owners [sic] of the [Property]" to increased liability. The demand letter the Basses sent before filing suit does not refer to the Original Lease or any breach of it. The only conduct the Basses complain of in this letter is Ellington Dirt's failure to file suit against Walker Sand "and any and all other parties responsible for the dumping of refuge [sic], garbage, concrete, waste, poles, containers and other debris on the [Property]." The letter states that "[t]his 'dumping' activity has significantly depreciated the value of the corporation's one major asset and has opened the door to potential liability in the event any of the waste or refuse is toxic." Though the Basses later amended the petition to assert breach of the Original Lease, the determination under article 5.14F is made as of the time that they brought suit—February 28, 1991.[5] *See* Act of May 26, 1973, 63d Leg., R.S., ch. 545, § 37, 1973 Tex. Gen. Laws at 1508–09. The demand letter, the evidence at trial, and the language of the original petition all show that the Basses' primary concern was that there might be significant environmental liability because of the dumping of the Phillips materials on the Property.

Nonetheless, Edward Bass testified at trial that, at the time of his deposition in May of 1995, the only information he had was that the material dumped on the Property from the Phillips site was "concrete, rebar and dirt." There was evidence that, before May of 1995, the Basses' environmental expert had visited the Property, taken samples, had tests performed, and issued a report. Edward Bass also testified to the following at this deposition: (1) as of 1992, he had not asked anyone to do any kind of study to determine whether the activities on the Property were dangerous, toxic, or in violation of any laws; (2) he filed this suit without doing any tests to find out whether the activity on the Property violated any laws; and (3) he had no knowledge that this concrete, rebar, and dirt was ever in contact with contaminated water. Walker testified that he invited Campbell, the Basses, and any other stockholder to inspect the Property themselves or to bring their own experts to test the Property to find out if there were problems, and there was testimony from Campbell corroborating this invitation and his failure to accept it. The evidence shows that, rather than attempt to test the Property and evaluate the potential environmental liability, if any, Edward Bass and Travis Campbell resigned as directors. The Basses and Campbell then filed this suit.

When the Basses finally did send an expert to examine the Property, the expert, Dianna Chianis, performed what she described as a "quick look-see" that did not rise to the level of a Phase 1 environmental investigation and was not even an investigation per se. Chiannis stated that Edward Bass asked her to visually inspect

---

5. The Basses agree in their brief that the time frame for this inquiry is the date they brought suit. Further, the evidence at trial showed, and the Basses agreed in the trial court and on appeal, that adding Butler and Robeau to this suit did not increase the amount of attorney's fees incurred at all. Therefore, we do not address whether the Basses had reasonable cause to bring suit against Butler and Robeau.

the Property and take some samples. She testified that the groundwater samples she took exceeded maximum contaminant levels established by the Texas Natural Resource Conservation Commission under Risk Reduction Rule Number 2, for cleaning up sites to protect human health and the environment. Chiannis concluded in her report that industrial waste had been deposited onto the Property improperly, without a permit; however, Chiannis testified that she defines "industrial waste" to mean "anything that comes from an industrial facility," including dirt, cement, rebar, and water.

Chiannis did not do any corings or borings on the Property. She testified that her soil samples had acceptable levels of possible contaminants. She stated that she was never able to determine whether any of the material she saw on the Property came from Phillips. Chiannis stated that the Risk Reduction Rules probably do not require remediation of the Property. She also testified that before collecting samples for testing, she did not wash the backhoe she used to gather soil and that she did not know whether anyone else had done so.

Appellees' expert, William Wilson, performed a Phase 1 and a Phase 2 environmental investigation for a nonparty who purchased part of the Property. At the time that he performed his sampling and testing, Wilson was not aware of this lawsuit and had not been retained by any party. Wilson performed more extensive testing than Chiannis, including coring. Wilson concluded that the Property had no contamination or pollution, that the levels for over 300 chemical compounds were not above background limits, and that none of the results were above the Texas industrial recommended action level that would require reporting to an environmental agency. Wilson testified that the maximum contaminant level used by Chiannis for her

groundwater sample was a standard from the Safe Drinking Water Act. Wilson testified that this standard is a high standard to be used for drinking water and that it was not a fair standard to use for water found on an industrial property. According to Wilson, Safe Drinking Water Act levels are commonly below background environmental levels. Wilson criticized the methods that Chiannis used to collect her samples, stating, for example, that some of the water tested was laced with paint and that Chiannis should have made sure the backhoe was decontaminated before and after each sampling event. Wilson testified that concrete and rebar are not hazardous materials.

We find there was sufficient evidence that the Basses did not conduct a reasonable prefiling inquiry into whether the allegations in the original petition were well grounded in fact. Furthermore, we find that, upon such an inquiry, they would have discovered that these claims were not well grounded in fact because the dumping on the Property did not create any material risk of environmental liability.

The settlement with Phillips and Olshan is not material to whether the Basses had reasonable cause to bring suit against Walker and Walker Sand because that settlement involved different defendants and occurred after the Basses brought suit. Though the Basses took some steps before suit to investigate the dumping, this investigation showed only that materials from Phillips had been dumped, not that this material was hazardous or toxic or was likely to give rise to environmental liability. Likewise, though the Basses' conversations with Robeau and their statements at two meetings of shareholders show their concern that there might be some risk of environmental liability because of the dumping of the Phillips materials, these conversations are not strong evidence of a

reasonable prefiling inquiry concerning the nature and extent, if any, of that liability.

Jerre Frazier, who has been Edward Bass's attorney for approximately 36 years, testified that Edward Bass told him he had learned that materials from Phillips had been dumped on the Property and that he was concerned about environmental liability. This exchange is not strong evidence of a reasonable investigation either. Although Frazier subsequently served as the Basses' counsel of record for an "interim period," he did not represent the Basses in the preparation and filing of the original petition. Frazier was living in Nashville, Tennessee and practicing law there at the time the Basses filed this suit. Though Frazier did testify that the defendants refused the Basses' requests to conduct environmental testing on the Property, his testimony indicates that this occurred after the Basses brought suit. Furthermore, Edward Peine, defense counsel for Ellington Dirt, Robeau, and Butler, testified that he repeatedly invited the Basses' counsel to inspect the Property and that at least six times various lawyers for the Basses postponed appointments to inspect the Property. Peine testified that he also invited Frazier to inspect the Property and that he did not oppose the Basses' request for a court order to inspect the Property. Peine testified that Phillips and Olshan wanted the trial court to sign an order compelling the inspection and that this was the reason for a court-ordered inspection of the Property.

■ As for the claims in the original petition against Delbert Walker, Walker testified that he always put the interests of Ellington Dirt first. Counsel for the Basses also asserted in his closing argument that the claims against the individuals—Walker, Butler, and Robeau—did not increase the attorney's fees. In addition, there was evidence that the actions taken by Walker and Walker Sand were authorized or ratified by the board of directors or a majority of the shareholders of Ellington Dirt. Though the Basses and Campbell may have disapproved, they were minority shareholders, and thus subject to being outvoted regarding corporate issues. And though minority shareholders may properly file derivative suits in certain circumstances, they may not seek to change corporate policies of which they disapprove by filing derivative claims without reasonable cause. See TEX. BUS. CORP. ACT art. 5.14; Act of May 26, 1973, 63d Leg., R.S., ch. 545, § 37, 1973 Tex. Gen. Laws at 1508–09.

Considering the evidence in a light that tends to support the disputed findings and disregarding all evidence and inferences to the contrary, we conclude that the record contains legally sufficient evidence to support the trial court's finding that the Basses brought this suit without reasonable cause. The evidence furnishes some reasonable basis for differing conclusions by reasonable minds about whether (1) the negligence, breach of fiduciary duty, bad faith, and fraud claims the Basses asserted in the original petition were warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or (2) the allegations in the original petition were well grounded in fact after reasonable inquiry. See Lee Lewis Constr., Inc., 70 S.W.3d at 782; Hughes v. Houston Northwest Med. Ctr., Inc., 680 S.W.2d 838, 843 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.) (holding there was factually sufficient evidence to support finding of no reasonable cause under article 5.14F when evidence showed that a reasonable inquiry by plaintiffs before filing suit would have shown no reasonable cause to bring a derivative suit). Considering and weighing all evidence in the record, we conclude that the trial court's finding that the Basses brought suit without reasonable cause is not so contrary to

the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain,* 709 S.W.2d at 176; *Hughes,* 680 S.W.2d at 843. Therefore, the evidence is legally and factually sufficient to support the trial court's finding that the Basses brought this suit without reasonable cause.

The Basses do not assert that the trial court abused its discretion in any way other than basing its ruling on this finding that allegedly was not supported by legally or factually sufficient evidence. Therefore, we hold that the trial court did not abuse its discretion by awarding expenses under article 5.14F. Accordingly, we overrule the Basses' first and second issues.

### Do the Basses assert reversible error in the third issue?

■ In the third issue, the Basses assert the trial court's findings of fact were not relevant to the issue of whether they brought suit without reasonable cause. The trial court found that the Basses commenced this suit without reasonable cause and found the amounts of appellees' expenses. Presuming for the sake of argument that the other findings were not relevant to appellees' counterclaim under article 5.14F, the Basses still have not shown that this alleged error probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1; *Johnston v. McKinney Am., Inc.,* 9 S.W.3d 271, 277–78 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Because the Basses have not shown reversible error, we overrule the third issue.

### Did the Basses preserve error as to the fourth issue?

■ In the fourth issue, the Basses assert the trial court erred by giving a credit of only $100,000 rather than $205,724.50, based on Campbell's settlement. However, the Basses do not cite and we have not found any place in the record where they asserted this complaint

in the trial court. Further, during closing argument, the Basses' counsel specifically requested that the trial court apply a settlement credit of $100,000 in the event the court awarded expenses. Therefore, the Basses invited the trial court to make the alleged error they now assert on appeal. We conclude that the Basses have not preserved error on their challenge to the settlement credit based on Campbell's settlement. *See* TEX.R.APP. P. 33.1; *Pascouet,* 61 S.W.3d at 612, 620 (finding waiver when party asserted as error action taken by trial court at party's request and also finding no preservation of error when party did not assert appellate complaint regarding settlement credit in trial court).

■ Under this issue, the Basses also assert that the trial court erred by not giving them credit for $9,000 that appellees allegedly received from a security bond posted by the plaintiffs. The Basses' counsel did state during closing argument that it was his understanding defendants had drawn on a $9,000 security bond posted by plaintiffs. However, the Basses did not complain of the failure to credit this amount in the judgment by any motion, objection, or request, and the trial court did not rule on any such motion, objection, or request, either expressly or impliedly. Therefore, the Basses also have failed to preserve error as to this alleged credit. *See* TEX.R.APP. P. 33.1; *Rush v. Barrios,* 56 S.W.3d 88, 106 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Accordingly, we overrule their fourth issue.

Having overruled all of the Basses' issues, we affirm the trial court's judgment.