**Affirmed and Memorandum Opinion filed May 29, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00010-CV

## KING FUELS, INC., Appellant

## V.

## BABAR H. HASHIM AND LEE OIL CO., INC., Appellees

**On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2010-31771**

## M E M O R A N D U M   O P I N I O N

In three issues, appellant King Fuels, Inc. argues that the trial court erred in calculating its damages, including attorneys' fees, for breach of a fuel supply agreement. We hold that the court correctly calculated each category of damages requested at trial. We also conclude that the record supports the trial court's implied findings that the breach induced by appellee Lee Oil Co., Inc. did not cause King Fuels to terminate the agreement, so the trial court did not err by

awarding certain damages and attorneys' fees solely against appellee Babar H. Hashim. We affirm.

## BACKGROUND

In August 2009, appellant King Fuels, Inc. contracted with Austin Petroleum, Inc. d/b/a Cobra Truck Stop (Cobra) to be its exclusive fuel supplier for a primary term of 180 months. Appellee Hashim, the president of Austin Petroleum, guaranteed the fuel supply agreement.

The agreement obligated Cobra to purchase all of its gasoline and diesel fuel through King Fuels, a wholesaler of fuels produced by Shell and other companies. Under the agreement, Cobra was to sell a minimum of 125,000 gallons of diesel fuel and 100,000 gallons of gasoline to the public per month. If it did not meet the gasoline requirement in a given month, Cobra agreed to purchase the remainder of the gallons at a rate of three cents over the "branded rack" rate, and to be billed at the end of each calendar month for any additional funds due to King Fuels based on King Fuels' schedule of prices.

Under the agreement, all gasoline supplied would be Shell-branded as Shell does not permit its wholesalers to commingle branded and unbranded gasoline. King Fuels agreed to pay the necessary costs and expenses of branding the gas station as a Shell dealership, which turned out to be more than $150,000. These expenses included "purchasing fascia, signs, sheet metal, logos, and other signage."

The fuel supply agreement also included provisions for liquidated damages for different types of breaches that might occur. Under paragraph thirteen of the agreement, Cobra agreed to pay King Fuels five cents per gallon for each gallon it purchased from another seller during the contract's term.

2

Under paragraph twenty, Cobra also agreed that if it committed a breach that caused King Fuels to terminate the contract, it would pay King Fuels liquidated damages of two cents multiplied by (1) either the average number of gallons Cobra sold per month or the minimum gallonage Cobra was required to sell, whichever was greater; and (2) the remaining number of whole months in the contract, up to a maximum of sixty months. Cobra further agreed that in such an event, it would pay King Fuels the net value of the brand signage and associated improvements, calculated as the sum of the "debrand cost as invoiced to [King Fuels]" and "the original purchase price and cost of installation of [King Fuels] provided improvements as reflected on the attached Exhibit 'D', less depreciation." The Exhibit D that appears in our record does not list any equipment, however.

The parties agreed that each and every remedy in the agreement would be "cumulative and . . . in addition to every other remedy hereunder, at law or in equity." The parties also agreed that in the event a dispute under the contract resulted in litigation, the losing party would be liable for the winning party's costs and expenses, including reasonable attorneys' fees.

Unbeknownst to King Fuels, it was not in fact Cobra's exclusive fuel supplier after their agreement took effect in August 2009. Eventually, King Fuels discovered that Cobra had been purchasing fuel from appellee Lee Oil. From the effective date of the agreement through February 9, 2010, Cobra bought 95,510 gallons of gasoline fuel and 99,759 gallons of diesel fuel from Lee Oil.

King Fuels also had difficulty collecting payment for fuel it delivered to Cobra. In accordance with its usual practice, King Fuels notified Cobra that it would electronically draft Cobra's account as payment for the fuel, but the draft was returned. King Fuels contacted Hashim, who assured King Fuels he was going to take care of the matter so it could re-present the draft to the bank. King Fuels

3

tried presenting the draft to the bank twice more; both times the draft was returned. As a result, King Fuels began delivering fuel to Cobra on a cash-on-demand basis.

King Fuels eventually terminated the fuel supply agreement. According to Michael Graves, CEO of King Fuels, the decision to terminate an agreement "depends on the financial stability of the individual more than anything else," including "what kind of personal or corporate guarantees we have, what the net worth of the individual is, our background or history with that person," and that "there's a whole lot of factors that go into it." Graves explained that King Fuels was concerned about the possibility that Shell would cancel its master agreement with King Fuels if it discovered its products were being commingled with non-Shell gasoline. Ultimately, the decision to terminate was not the result of a single incident, but rather "everything in total, the huge returned drafts, the . . . commingling of fuel there and everything else that was going on, that's . . . just one bad thing after another," according to Graves. Cobra's bank later foreclosed on the gas station, and King Fuels purchased it out of foreclosure.

King Fuels filed suit in Harris County district court, originally naming Cobra, Hashim, and Lee Oil as defendants.[1] The original petition alleged that Cobra and Hashim had breached the fuel supply agreement by purchasing fuel from other sources, and that Lee Oil had tortiously interfered with the agreement by supplying the fuel. King Fuels alleged it had terminated its fuel supply agreement with Cobra as a result of this breach. King Fuels also alleged the defendants had acted fraudulently and made misrepresentations, and had conspired together to accomplish the fraud. King Fuels eventually nonsuited Cobra.

---

[1] King Fuels also sued Aims Stores, LLC d/b/a Key Exxon and Abdul Khader, with whom it had an exclusive agreement to supply fuel for a different station, as well as Alexander Oil, a company that it alleged had supplied some fuel to that station. King Fuels later non-suited its claims against Alexander Oil, and the trial court signed a take-nothing judgment on its claims against Aims Stores and Khader, which are not at issue in this appeal.

4

The case was tried to the bench. King Fuels requested relief under paragraph twenty of the agreement as compensation for its damages from terminating the agreement with Cobra. King Fuels calculated its damages under paragraph twenty as $110,000 for the initial branding expenses and $120,000[2] for fuel that would have been sold under the remainder of the contract. Additionally, King Fuels sought $9,763.45 in damages under paragraph thirteen for fuel that Cobra purchased from Lee Oil in violation of the agreement. Hashim did not answer or appear at trial. Lee Oil asserted that it was not aware of the fuel supply agreement, and alternatively that any interference by it was not a cause of the agreement's termination. Lee Oil also argued that if the court found it liable for tortious interference, liability should be apportioned between it and Hashim.

The trial court awarded King Fuels a default judgment against Hashim, including $120,000 in actual damages (plus prejudgment interest) and $38,000 in reasonable attorneys' fees. The court also rendered judgment that King Fuels was entitled to $9,763.45 in actual damages (plus prejudgment interest) from Lee Oil. The judgment allowed King Fuels to recover all costs of court from Hashim and Lee Oil, jointly and severally. No findings of fact or conclusions of law were properly requested or filed.

### ANALYSIS

King Fuels raises three issues on appeal. First, it contends that the trial court miscalculated available damages. Second, King Fuels argues the trial court erred as a matter of law in failing to award the full amount of contract damages against Lee Oil. Third, King Fuels argues the trial court should have held Lee Oil jointly and severally liable for the total damage award. We consider each issue in turn.

---

[2] This figure represented two cents per gallon multiplied by 100,000 gallons per month multiplied by sixty months.

## I.    Standard of review

The record does not reflect that King Fuels made a proper request for findings of fact and conclusions of law.  *See* Tex. R. Civ. P. 296, 297.  Where findings of fact and conclusions of law are neither requested nor filed, "the trial court's judgment implies all necessary fact findings in support of the judgment." *Schoeffler v. Denton*, 813 S.W.2d 742, 744 (Tex. App.—Houston [14th Dist.] 1991, no writ).  These implied findings may be challenged for legal and factual sufficiency when the appellate record includes the reporter's and clerk's records, as it does here.  *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

A party challenging the legal sufficiency of an adverse finding on an issue upon which it had the burden of proof at trial must establish, as a matter of law, all essential facts in support of the issue.  *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *TH Invs., Inc. v. Kirby Inland Marine, L.P.*, 218 S.W.3d 173, 189 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  The party "must show that there is no evidence to support the fact finder's finding and that the evidence conclusively establishes the opposite of the finding."  *Indian Oil Co., LLC v. Bishop Petroleum, Inc.*, 406 S.W.3d 644, 652 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001)).  A party challenging the factual sufficiency of an adverse finding on an issue on which it had the burden of proof at trial must demonstrate that the finding "is against the great weight and preponderance of the evidence" so as to be clearly wrong and unjust.  *Dow Chem. Co.*, 46 S.W.3d at 242; *TH Invs.*, 218 S.W.3d at 190.

**II.     The trial court did not err in calculating the damages available under the agreement.**

In its first issue, King Fuels argues that the trial court miscalculated its full array of damages under the agreement's various liquidated damages provisions. We find no error in the trial court's calculations: King Fuels did not establish as a matter of law that it was entitled to recover any branding expenses, and the trial court awarded King Fuels the full amount of post-termination lost sales it requested at trial. King Fuels has not challenged the trial court's calculation of damages for pre-termination lost sales.

The interpretation of an unambiguous contract is a question of law, which we review de novo. *Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 825 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Our primary concern is to ascertain the parties' true intentions as expressed in the contract. *Weaver v. Jamar*, 383 S.W.3d 805, 810 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not." *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006).

King Fuels has not established as a matter of law that the agreement allowed it to recover damages stemming from its initial branding investments in the Cobra gas station. Paragraph twenty dictated that the net value of the brand signage and associated improvements would be calculated as the sum of the "debrand cost as invoiced to [King Fuels]" and "the original purchase price and cost of installation of [King Fuels] provided improvements *as reflected on the attached Exhibit 'D'*, less depreciation . . . ." (italics added). But there is no evidence that the station was debranded or that the parties ever listed improvements on the attached Exhibit D, which contains only a heading and is otherwise blank. Although King Fuels

7

submitted evidence that it did pay for certain expenses involved in branding the Cobra station, none of those expenses are reflected on Exhibit D. Under the plain terms of the agreement, therefore, King Fuels may not recover any of those expenses upon termination, and the trial court properly did not award them.[3]

King Fuels also complains on appeal that the liquidated damages calculation for post-termination sales under paragraph twenty should have included diesel as well as gasoline sales, resulting in an award of $270,000. But the award King Fuels did receive—$120,000—was the full amount it asked for at trial. Whether or not the contract unambiguously contemplated calculation based on both gasoline and diesel sales, King Fuels chose to request compensation based only on gasoline. Thus, any error in calculating post-termination lost sales under paragraph twenty belongs to King Fuels, not the trial court. *See Bass v. Walker*, 99 S.W.3d 877, 889 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding that appellants could not complain that the trial court erred by giving a settlement credit of only $100,000 rather than $205,724.50 after specifically requesting a credit of $100,000 during closing argument).[4]

---

[3] King Fuels also points to a memorandum signed by the parties, which was separate from the fuel supply agreement but executed on the same day. The memorandum acknowledged that King Fuels paid more than $150,000 to brand the station. This provision does not demonstrate an intent that King Fuels should be reimbursed for these costs upon termination, however. To the contrary, the memorandum states only that "[i]n consideration of" King Fuels' payment, all rebates received from the station's operation shall be paid to King Fuels.

[4] Texas Rule of Appellate Procedure 33.1(d) permits a party in a nonjury case to complain for the first time on appeal about "the legal or factual insufficiency of the evidence—including a complaint that the damages found by the trial court are excessive or inadequate." We would face a different issue if King Fuels had requested $270,000 at trial and did not object to the trial court's awarding $120,000. King Fuels' failure to request and prove greater damages does not make the evidence supporting the $120,000 awarded by the trial court legally or factually insufficient.

**III.    The trial court did not err in failing to award post-termination damages and attorneys' fees against Lee Oil.**

In its second and third issues, King Fuels argues that the trial court erred in failing to award the full amount of contract damages, including attorneys' fees, against Lee Oil.  In particular, King Fuels contends that the court failed to award damages against Lee Oil cumulatively under paragraphs thirteen and twenty as required by the agreement.  The trial court awarded $9,763.45 in damages against Lee Oil, which King Fuels characterizes as an award calculated using the liquidated damages formula for pre-termination lost sales in paragraph thirteen.  King Fuels' position is that Lee Oil also should be jointly and severally liable for the $120,000 in damages that the trial court awarded only against Hashim, which King Fuels characterizes as an award of liquidated damages for post-termination lost sales under paragraph twenty.[5]

We note that the trial court was not asked to make findings, so it did not specify whether its awards were tied to particular paragraphs of the agreement.  For purposes of our analysis, however, we assume without deciding that King Fuels' characterizations are correct.  Even under that assumption, we disagree with King Fuels' argument because there is evidence to support the trial court's implied finding that Lee Oil's interference caused only pre-termination damages to King Fuels, and this finding was not against the great weight of the evidence.  We also hold that King Fuels was not entitled to recover attorneys' fees against Lee Oil.

---

[5] King Fuels has not separately argued on appeal that the trial court's award of $120,000 against Hashim was a failure to award damages against him cumulatively under both paragraphs, nor has it asked us to modify the judgment against Hashim.  Similarly, King Fuels' arguments at trial did not clearly request the full array of damages against each party individually.  We therefore restrict our analysis to whether the record supports the trial court's calculation of damages against Lee Oil.

Tortious interference requires proof that (1) contracts existed that were subject to the defendant's interference; (2) the defendant willfully and intentionally committed acts of interference; (3) the acts proximately caused damages; and (4) actual damages or loss occurred. *Faucette v. Chantos*, 322 S.W.3d 901, 913 (Tex. App.—Houston [14th Dist.] 2010, no pet.). An action for tortious interference uses the same measure of damages as would an action for the underlying breach of the contract at issue. *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 219 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The award should put the plaintiff in the same economic position he would have occupied absent the interference, i.e. had the contract actually been performed. *American Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990).

In light of these principles, the trial court's decision to award damages against Lee Oil under paragraph thirteen means that it necessarily found Lee Oil's interfering acts caused Cobra to violate paragraph thirteen. Paragraph twenty requires Cobra to pay King Fuels liquidated damages for lost gasoline sales "[i]n the event [Cobra] breaches its obligations causing [King Fuels] to terminate the contract." King Fuels argues these damages also should have been awarded against Lee Oil because the trial court made an implied finding that Cobra's breach—induced by Lee Oil—caused King Fuels to terminate the agreement. We disagree.

In order to award $120,000 in damages against Hashim under paragraph twenty, the trial court necessarily had to find that Cobra breached the agreement and caused its termination, so the judgment implies a finding to that effect. But the trial court awarded only $9,763.45 in pre-termination damages against Lee Oil under paragraph thirteen, which implies a finding that Lee Oil's tortious

10

interference with the agreement caused only those damages—in other words, that those damages put King Fuels in the economic position it would have occupied absent Lee Oil's interference. We conclude that King Fuels has not proven by conclusive evidence or the great weight of the evidence that Lee Oil's interference also caused the termination and $120,000 in post-termination damages.

Although there is an implied finding that a breach by Cobra caused King Fuels to terminate the agreement, there was evidence that purchasing fuel from Lee Oil was not the only breach Cobra committed. For example, there was testimony that Cobra's drafts had been returned three times and that Cobra was continually behind in making payments. Furthermore, Graves testified that "more than anything else," King Fuels considers the financial stability of the individual in determining whether or not to terminate a fuel supply agreement. Although Graves also said that King Fuels probably would not have continued the agreement if Cobra had become current in its payments, the trial court—as trier of fact—was entitled to resolve any factual disputes. The court also heard evidence that although Lee Oil allegedly delivered fuel to another location with which King Fuels had an exclusive supply agreement, King Fuels chose not terminate that agreement.

On this record, the trial court could reasonably have concluded that it was Cobra's payment defaults and lack of financial stability that caused King Fuels to terminate the agreement. Because King Fuels has not established by conclusive or overwhelming evidence that Lee Oil's interference caused the termination and $120,000 in liquidated post-termination damages under paragraph twenty, the trial court did not err in failing to award those damages against Lee Oil. *See Dow Chem. Co.*, 46 S.W.3d at 242.

11

King Fuels makes a related argument that the trial court erred in not holding Lee Oil jointly and severally liable with Hashim for the paragraph twenty damages. In King Fuels' view, both the party who breaches a contract and the party who tortiously interferes with it are jointly and severally liable for all actual damages incurred. Yet even if King Fuels were correct that this principle governs cases in which the interference and breach cause the same damages (a question we need not decide), it has no application here given the trial court's implied finding that Lee Oil's interference caused only paragraph thirteen damages.

The trial court also did not err in awarding attorneys' fees solely against Hashim. Although King Fuels argues that fees are simply a fourth element of damages under the contract, "[c]ourts have long distinguished attorney's fees from damages." *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013); *see id.* at 173 ("Not every amount, even if compensatory, can be considered damages."). The general rule in Texas is that "unless provided for by statute or by contract *between the parties*, attorney's fees incurred by a party to litigation are not recoverable against his adversary either in an action in tort or by suit upon a contract." *Turner v. Turner*, 385 S.W.2d 230, 233 (Tex. 1964) (emphasis added); *see also Gannett Outdoor Co. of Tex. v. Kubeczka*, 710 S.W.2d 79, 90 (Tex. App.—Houston [14th Dist.] 1986, no writ) ("Attorney's fees are not recoverable in a tort action unless authorized by statute.").

Here, there was no contract between Lee Oil and King Fuels, and thus no agreement that Lee Oil would pay attorneys' fees in the event of litigation. The cases King Fuels cites are inapposite because they involve torts arising out of the tortfeasor's breach of a contract.[6] Here, King Fuels' claim is that Lee Oil's

---

[6] *See, e.g.*, *Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex. 1990); *Citizens Bank & Trust Co. of Baytown v. Ertel*, No. 01-98-00548, 2001 WL 26141, at *12 (Tex. App.—Houston [1st Dist.] Jan. 11, 2001, pet. denied) (mem. op., not designated for publication); *Ramos*

12

interference caused Cobra to breach its contract, not that Lee Oil's interference arose out of Cobra's breach. Even the agreement's provision for attorneys' fees only purports to govern disputes "*hereunder* which result[] in litigation" (emphasis added). Although the dispute between King Fuels and Lee Oil concerns interference with the fuel supply agreement in which the fee provision appears, the dispute is not "[]under" that agreement because Lee Oil is not a party. We therefore overrule King Fuels' second and third issues.

## CONCLUSION

Having overruled each of King Fuels' issues, we affirm the trial court's judgment.

/s/    J. Brett Busby
        Justice

Panel consists of Justices McCally, Busby, and Wise.

---

*v. Chapa*, No. 04-95-99592, 1997 WL 438754, at \*10–11 (Tex. App.—San Antonio Aug. 6, 1997, no writ) (mem. op., not designated for publication); *Wilson v. Ferguson*, 747 S.W.2d 499, 504 (Tex. App.—Tyler 1988, writ denied).