866 P.2d 339

**Joe WHITE, on behalf of The BANES COMPANY DERIVATIVE ACTION, Plaintiff–Appellant,**

**v.**

**The BANES COMPANY, Priscilla Jolly, as personal representative of the Estate of Vernon Jolly, and Priscilla Jolly, personally, Defendants–Appellees.**

No. 20984.

Supreme Court of New Mexico.

Dec. 14, 1993.

Thompson & Kushner, Randall L. Thompson, Albuquerque, for appellant.

Sheehan, Sheehan & Stelzner, Judith D. Schrandt, Timothy M. Sheehan, Albuquerque, for appellees.

## OPINION

FRANCHINI, Justice.

Joe White appeals from a partial summary judgment entered in favor of defendants on a shareholder's derivative action and a judgment for specific performance in favor of defendants on their counterclaim. Specifically, the trial court ordered White to tender his shares of stock to defendant Banes Company (Banes) for purchase at a price of $17.87 per share or a total of $67,441.38. The trial court awarded defendants their costs and attorney's fees in the amount of $60,894.79 and offset this sum against the purchase price of the stock. We affirm the judgment of the trial court except for its holding that White was not a shareholder, and we reverse the

award of attorney's fees under NMSA 1978, Section 53–11–47(B) (Repl.Pamp.1993).

## I.

The defendants-appellees in this appeal are Banes and Priscilla Jolly. Priscilla Jolly is the widow and personal representative of Vernon Jolly, who was the chairman, chief executive officer, and majority shareholder of Banes. This lawsuit was brought as a shareholder derivative suit by White to contest the Banes' decision to drop two life insurance policies insuring the life of Vernon Jolly. One policy was a $50,000 whole life policy with a cash value of less than $4,000. The second policy was a $1,000,000 term policy with no cash value. The life insurance was purchased to insure against the inevitable economic loss to Banes should Vernon die prematurely, and also for bonding and financial purposes, at a time when Banes was an active construction company. The insurance was dropped after Banes had ceased doing business as a construction company and was winding down its affairs. When Banes dropped the insurance, the insurance agent offered the policies to Vernon, who assumed ownership of the policies rather than let them lapse. Vernon was diagnosed with melanoma in September 1989 and died in December 1990.

Banes counterclaimed and alleged that White failed to tender the remainder of his shares of stock as required in the Stock Restriction Agreement. White was employed by Banes until December 1985, when he resigned. On May 1, 1987, White signed an application for stock distribution from Banes' Employee Stock Ownership Plan (ESOP), under which he had accrued an interest during his employment. In the application, White agreed that the stock distributed to him was subject to the ESOP agreement which required him to sell back his shares over a period of four years. About the same time, the shareholders and Banes entered into the Restated Stock Restriction Agreement. This agreement excluded shareholders who received stock through an ESOP distribution.

In 1987 and 1988, White gave notice of offer and tendered stock in accordance with

the ESOP agreement. Banes bought the stock at its September 30, 1986 and 1987 book value, pursuant to the terms of the agreement, without objection from White. In 1989, after giving notice of offer, White approached Vernon Jolly and complained about the September 30, 1988 book value. By letter, he requested that Banes not purchase the stock offered and Banes did not purchase his tendered stock. White has not tendered all of his shares under the terms of the ESOP and still holds six percent of Banes' stock.

Banes filed a motion for partial summary judgment stating that White had an obligation to sell back his shares pursuant to the ESOP, and that therefore he did not have standing as a shareholder because he was holding his shares in breach of that agreement. White argued that there was an oral agreement based on a conversation he had with Vernon that rescinded the ESOP. The trial court ruled that the oral agreement to modify the ESOP was barred by the statute of frauds and that therefore White "has no standing to bring a stockholder derivative action." The trial court specifically provided that White would not be precluded from asserting in the trial of the counterclaim the fact that an evaluation of his stock should take into consideration the effect of any alleged improper sale or transfer of corporate assets.

Trial on Banes' counterclaim was held in May 1992. The trial court found that Banes was entitled to specific performance of the ESOP. The trial court concluded that White was required to tender all his stock back to Banes by May 31, 1991 and that Banes was obligated to buy this stock at the valuation set as of September 30, 1990. With respect to the life insurance issue, the trial court concluded that the changes of ownership and beneficiary designations on the life insurance policies were not improper transfers of Banes' assets and such changes were supported by the business judgment rule. The trial court concluded that White had no standing to enforce the Restated Stock Agreement because he was not a party to it or a third party beneficiary as an ESOP shareholder. The trial court also concluded

that Banes' failure to purchase Vernon Jolly's shares of stock from Priscilla was not actionable. Finally, the trial court concluded that White's shareholder derivative action was brought without reasonable cause and that the defendants were entitled to recover their cost and attorney's fees.

## II.

White raises the following three issues on appeal: (1) Whether the trial court erred when it entered summary judgment based on its holding that White did not have standing to bring a shareholder's derivative action; (2) whether the trial court erred in applying the business judgment rule to the life insurance transfers; and (3) whether the trial court abused its discretion in assessing attorney's fees against White.

White contends that the trial court erred when it granted summary judgment based on its holding that White did not have standing to bring a shareholder derivative action. Although we disagree with the trial court on White's shareholder status, the judgment on standing did not prevent the court from reaching issues of alleged mismanagement, the most important being whether Banes acted improperly in transferring the life insurance policies. That issue was addressed by the court in determining the value of White's shares for purposes of the buy-sell agreement. White's shareholder status does affect the issue of awarding attorney's fees and, furthermore, we consider the issue of standing important enough to address.

For a shareholder to bring an action "in the right of a domestic or foreign corporation" he or she must be, "a shareholder of record or the beneficial owner of shares held by a nominee or the holder of voting trust certificates at the time of the transaction of which he complains...." NMSA 1978, Section 53–11–47(A) (Repl.Pamp.1993). We have never interpreted this section of the Business Corporation Act, NMSA 1978, Sections 53–11–1 to –18–12 (Repl.Pamp.1993). Section 53–11–47(A) was part of the 1975 amendments to the New Mexico Corporation Act. 1975 N.M.Laws, ch. 64, § 24. Drafters of the 1975 amendments sought to keep our

Act consistent with the "Model Act to facilitate interpretation of the state corporation statutes by making case law of other states available for guidance." Charles I. Wellborn & Suzanne M. Barker, *1975 Amendments to the New Mexico Business Corporations Act,* 6 N.M.L.Rev. 57, 57 (1975). The parallel section enacted in 1975 was NMSA 1953, Section 51–24–45.1(A) (Supp.1975). This provision was consistent with prior New Mexico case law which held that to be able to bring a derivative suit, a stockholder must be a stockholder at the time of the transaction complained of unless the wrong is a continuing one and has not been consummated at the time the stockholder acquired his or her shares. *Goldie v. Yaker,* 78 N.M. 485, 487, 432 P.2d 841, 843 (1967).

Banes encourages us to interpret our contemporaneous ownership requirement to also include a continuous ownership rule. *See Metal Tech Corp. v. Metal Techniques Co.,* 74 Or.App. 297, 703 P.2d 237, 242 (1985) (requiring contemporaneous and continuous ownership of stock throughout the duration of litigation to maintain standing in a derivative action). Under this interpretation, Banes contends, White lost his standing to bring the derivative action when the trial court ruled on Banes' motion for summary judgment whereby White was obligated to sell back his shares under the terms of the buy-sell agreement.

■ First, we agree with the reasons for the continuous ownership rule. A shareholder derivative action is a procedure by which the shareholder can assert a right of action on behalf of the corporation when the corporation has refused a properly made demand to enforce the corporation's rights. *Koster v. Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 522, 67 S.Ct. 828, 830, 91 L.Ed. 1067 (1947). As Justice Jackson observed in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 549, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949):

> [The shareholder plaintiff] sues, not for himself alone, but as representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and

integrity. And while the stockholders have chosen the corporate director or manager, they have no such election as to a plaintiff who steps forward to represent them. He is a self-chosen representative and a volunteer champion.

*Id.* Thus, "[s]tanding is justified only by [the] proprietary interest created by the stockholder relationship and the possible indirect benefits the nominal plaintiff may acquire *qua* stockholder of the corporation which is the real party in interest." *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 735–36 (3d Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971). We do not believe that our legislators would choose to entrust the responsibility of vindicating unenforced corporate rights to someone who is no longer a member of the class which will benefit or suffer from such actions. Yet, this is not the case here. White is still a legal shareholder; although he is holding his shares in breach of the agreement, he still holds the shares. He currently is the owner of 3,774 shares of Banes' stock, the judgment for specific performance having been stayed on appeal. Also, at the time this action was filed, White was a shareholder and neither party had complied with the terms of the ESOP. Banes' first attempt to enforce the agreement was its counterclaim filed on July 19, 1991. We will not allow the filing of the counterclaim to serve to defeat White's standing. "[L]ack of standing should not be applied to *abolish* an existing substantive right of action." *Shelton v. Thompson,* 544 So.2d 845, 848 (Ala.1989).

Although the trial court erred in holding that White was not a shareholder, the grant of partial summary judgment did not preclude litigation of the merits of the case. On summary judgment, and at trial, the court heard evidence to support its conclusions that White was required to tender his shares, White was not a party to the Restated Stock Restriction Agreement, and Banes was not obligated to purchase Priscilla's shares after Vernon's death. We will not correct errors which will not affect the ultimate decision of the trial court. *Prude v. Lewis,* 78 N.M. 256, 260, 430 P.2d 753, 757 (1967).

White contends that the trial court erred in applying the business judgment rule to the transfers of the life insurance policies. The business judgment rule states:

"If in the course of management, directors arrive at a decision, within the corporation's powers (*inter vires*) and their authority, for which there is a reasonable basis, and they act in good faith, as the result of their independent discretion and judgment, and uninfluenced by any consideration other than what they honestly believe to be the best interests of the corporation, a court will not interfere with internal management and substitute its judgment for that of the directors to enjoin or set aside the transaction or to surcharge the directors for any resulting loss."

*DiIanconi v. New Cal Corp.*, 97 N.M. 782, 788, 643 P.2d 1234, 1240 (Ct.App.1982) (citations omitted) (quoting Harry G. Henn & John R. Alexander, *Laws of Corporations* § 242 (1983)).

We examine the record with those basic considerations in mind. The evidence shows that there was no need for the insurance with respect to bonding or financing because Banes was no longer engaging in construction. Nor was there a need for insurance to finance the buy out of Vernon's share by other managing shareholders, since there were no other managing shareholders with a right to buy out Vernon's share. The premiums constituted a significant expense to Banes that could be eliminated by dropping the policies. Furthermore, the cash value of the policies was not significant. The million-dollar policy had no cash value and was not an asset on the corporate books. The cash value of the $50,000 policy was attributed to compensation for Vernon. Viewing this evidence in the light most favorable to support the trial court's findings, *Duke City Lumber Co. v. New Mexico Environmental Improvement Board*, 101 N.M. 291, 294, 681 P.2d 717, 720 (1984), we believe the court's findings are amply supported by the evidence. Findings to the effect that there was no longer a viable business purpose for Banes to have insurance on Vernon's life support the trial court's conclusion that the change in ownership of the policies was done in good faith and that the transaction was inherently fair to the corporation.

White's final argument addresses whether the trial court abused its discretion in assessing attorney's fees against him. Section 53–11–47(B) contemplates a discretionary award of attorney's fees upon a finding that the action was brought "without reasonable cause." There are no New Mexico cases interpreting Section 53–11–47(B). The commentary to the Model Business Corporation Act, on which our Act is patterned, states that the "without reasonable cause or for an improper purpose" test is "similar to but not identical" to the test for dissenters' rights to attorney's fees, which is arbitrary, vexatious or not in good faith. 2 Model Business Corp. Act Ann. § 7.46 cmt. (1984). "The derivative action situation is sufficiently different from the dissenters' rights situation to justify a different and less onerous test for imposing cost on the plaintiff." *Id.* The reasonable cause or improper purpose test is "appropriate to deter strike suits, on the one hand, and on the other hand to protect plaintiffs whose suits have a reasonable foundation." *Id.*

White urges us to interpret "without reasonable cause" to mean "groundless" and apply the subjective standard used in *City of Farmington v. L.R. Foy Construction Co.*, 112 N.M. 404, 407, 816 P.2d 473, 476 (1991). Under this interpretation, for the plaintiff to be sanctioned with attorney's fees, a showing must be made that "[he or she] subjectively knew at the time the suit was filed that the complaint was groundless." *Id.* A "groundless" claim is one in which the allegations in the complaint are "not in good faith discoverable through litigation." *Id.* at 408, 816 P.2d at 477.

Banes contends that "without reasonable cause" is more closely analogous to the award of attorney's fees for unreasonable denial of an insurance claim under NMSA 1978, Section 39–2–1 (Repl.Pamp.1991). Under this section, we look at "the insurer's conduct from an objective standpoint and [measure] it against a 'reasonably prudent insurer' standard." *Jackson Nat'l Life Ins. Co. v. Receconi*, 113 N.M. 403, 420, 827 P.2d 118, 135 (1992).

■ If our purpose in awarding attorney's fees is to protect plaintiffs whose suits have a reasonable foundation, we believe the "groundless" test is a better test to pattern the "reasonable cause test" after. Thus, if White knew when he filed the action that his complaint was without a reasonable foundation, Banes would be entitled to attorney's fees.

With those guidelines in mind, we hold that the trial court's conclusion that White's action was brought without reasonable cause was an abuse of discretion. First and most importantly, as we determined earlier, White was a shareholder, and therefore had standing. Additionally, the trial court relied on White's failure to exhaust his intercorporate remedies in awarding attorney's fees under Section 53–11–47(B).

Section 53–11–47(A)(3) requires that the complainant allege "with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors and the reasons for his failure to obtain the action or for not making the effort." Substantially the same requirement exists in SCRA 1986, 1–023.1. The Arizona court in *Callanan v. Sun Lakes Homeowners' Ass'n No. 1*, 134 Ariz. 332, 656 P.2d 621 (Ct.App.1982), held that the trial court is entitled to consider plaintiffs' failure to comply with presuit demand requirements in determining the presence of "reasonable cause." Although we believe the demand requirement is crucial to the derivative action, in our view, relying on it alone as the reason for awarding attorney's fees was an abuse of discretion here.

In *RCM Securities Fund, Inc. v. Stanton*, 928 F.2d 1318, 1329 (2d Cir.1991), the federal appeals court stated that the federal rule equivalent of SCRA 1–023.1, "is only a procedural requirement empowering federal courts to determine from the pleadings whether the demand requirement has been met." If White's complaint was defective under Section 53–11–47(A)(3) and SCRA 1–023.1, why was it not dealt with by a motion to dismiss or a motion for a more definite statement? White could have amended his complaint and stated the efforts he made to obtain results from the directors or, in the alternative, demonstrated the futility of such a demand. We hold that it was an abuse of discretion for the trial court to wait until $60,000 of legal fees were incurred and then order the payment of those legal fees on the basis that the action was unreasonable because of a failure to pursue intercorporate remedies.

In view of the foregoing, we affirm the judgment of the trial court except for its holding that White was not a shareholder, and reverse the award of attorney's fees. Accordingly, the cause is remanded for an entry of judgment consistent with this opinion.

**IT IS SO ORDERED.**

RANSOM, C.J., and FROST, J., concur.