Motion for Rehearing Overruled; Affirmed; Opinion of November 7, 2002,
Withdrawn and Substitute Opinion filed March 6, 2003









Motion for Rehearing Overruled;  Affirmed; Opinion of November 7, 2002,
Withdrawn and Substitute Opinion filed March 6, 2003.                       

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-00532-CV

____________

 

EDWARD BASS AND CARY L. BASS,
Appellants

 

V.

 

T. DELBERT WALKER, WALKER SAND, INC., ELLINGTON DIRT, INC.,
CAMILLE BUTLER, AND ED ROBEAU, Appellees

 



 

On
Appeal from the 269th District Court

Harris County, Texas

Trial
Court Cause No. 91-08515

 



 

S
U B S T I T U T E  O P I N I O N

We
overrule the motion for rehearing filed by appellants Edward Bass and Cary L.
Bass.  We withdraw the opinion issued in
this case on November 7, 2002, and we issue the following opinion in its place.  








Appellants
Edward Bass and Cary L. Bass challenge the sufficiency of the evidence
supporting the trial court=s determination that they brought this derivative suit without
reasonable cause.  Because there was
sufficient evidence that appellants filed suit without reasonable cause and
because the trial court did not abuse its discretion in ordering them to pay
appellees= expenses under the Texas Business Corporation Act, we affirm
the trial court=s judgment.

                              Factual and Procedural Background

In 1982, T. Delbert Walker, Ed Robeau, Travis Campbell, Dr.
E. C. Butler, Dr. G. H.  Barfield[1],
and a group that included several members of the Bass family formed Ellington
Dirt, Inc., for the purpose of acquiring two adjacent tracts of land in
southeast Harris County (Athe Property@).  In that same year,
Ellington Dirt purchased the Property and leased it to Walker Sand, Inc., under
a 1982 lease entitled ALease for the Purpose of Removal and Sale of Sand and Related
Fill Material@ (Athe Original Lease@). 
At all material times, Delbert Walker was the principal stockholder of
Walker Sand and the president of both Walker Sand and Ellington Dirt.  

The Original Lease contained the following terms:

!         The term
of the lease was 15 years.

!         During
the first four years of the lease, Walker Sand would pay Ellington Dirt $0.50
per cubic yard for all sand, fill dirt, and topsoil removed from the Property.

!         In the
fifth year, this royalty amount would increase to $0.60
per cubic yard, and it would increase by
five percent for each year thereafter.  

!         If
Walker Sand failed to pay the royalties as specified in the lease, Ellington
Dirt had the right to immediately terminate the lease, re-lease the Property,
and, if it desired, bring suit against Walker Sand. 

!         If
Walker Sand did not work the lease or move sand, fill dirt, or topsoil for a
period of nine months, Ellington Dirt had the option to terminate the lease. 








!         Walker
Sand agreed to excavate all material on the Property to a depth of 35
feet.  

!         After Walker Sand completed this
excavation, Ellington Dirt would have the option to sell the Property to Walker
Sand at fair market value or receive one-tenth of all revenues generated from
the operation of a landfill on the Property.

!         In connection with the landfill option,
Walker Sand agreed to obtain any necessary permits and to comply with the laws
applicable to the operation of landfills. 

 

Approximately
two years after the Original Lease was signed, a number of problems arose that
impacted the operations.  First, the
economy suffered a downturn.  Because of
the adverse economic conditions and other factors, the Original Lease was not
generating much income.  In 1986,
Ellington Dirt agreed not to escalate the royalties as provided in the
lease.  Delbert Walker testified that he
told the shareholders of Ellington Dirt that circumstances made it unlikely
that a landfill permit could be acquired for the Property.  Ellington Dirt never excavated all material
on the Property to a depth of 35 feet.  








In
1989, the Basses[2]
began to suspect that the Property was being used as a dump site.  Edward Bass and Travis Campbell found
concrete, rebar, pipe, tires, and other materials on the Property.  At a shareholders=
meeting in October of 1990, Edward Bass asked Walker about the apparent dumping
on the Property.  According to Bass,
Walker initially denied it, but later stated that seven to ten acres of the
Property had been used for dumping and that permits were unnecessary because he
dumped only Adirt and crushed concrete.@  The Basses feared that
the material dumped on the Property might be debris from a 1989 explosion at a
Phillips Petroleum Plant and, therefore, might contain hazardous waste.  Walker testified that he invited the Basses
to inspect and test the Property, but instead, Edward Bass resigned from
Ellington Dirt=s board of directors, and thereafter the Basses filed this
lawsuit.  The dumping on the Property
apparently ceased before the suit was filed in accordance with a resolution
passed by the Ellington Dirt shareholders in December of 1990.   

In February of 1991, Travis Campbell and the Basses filed
this shareholder derivative suit on behalf of Ellington Dirt against Delbert
Walker and Walker Sand.  At all material
times, the Basses were minority shareholders in Ellington Dirt.  In their original petition, the Basses
alleged derivative-action claims on behalf of Ellington Dirt against Walker and
Walker Sand for Abreaches of fiduciary duty, bad faith, and fraudulent
business transactions.@  In their petition,
the Basses alleged that the defendants Amade use of the land, for Defendants= financial gain, without compensating
the rightful owner of the land therefor@ and that A[a]dditionally, such uses of the land
have greatly impaired its market value and subjected the owners of the land to
increased liability.@  They also asserted
claims for negligence and fraud and requested exemplary damages in the amount
of $500,000.  The Basses made no mention
of the Original Lease in their petition, nor did they assert any claim for
breach of the Original Lease in their original pleading.








Several months after the Basses filed suit, the parties to
the Original Lease amended it to provide, among other things, that the royalty
payment would remain at $0.50 per cubic yard with no escalations (Athe Amended Lease@). 
The Amended Lease, signed in October of 1991, further provided that
Walker Sand would have the right, but not the duty, to excavate 93 acres of the
Property to a depth of 35 feet and to move any unmarketable material without
payment of royalty.  Ellington Dirt
approved this Amended Lease after Camille Butler[3]
and Ed Robeau were elected as directors of the corporation.  After this amendment, the Basses amended
their pleadings to add Butler and Robeau as defendants, alleging, among other
things, that Butler and Robeau breached their fiduciary duties as directors by
approving the Amended Lease.  Later, the
Basses added Olshan Demolishing Company, Inc. and Phillips Petroleum Company as
defendants and also asserted additional
claims, including an allegation that Walker Sand breached the Original
Lease.  Appellees/defendants filed a
counterclaim against the Basses and Campbell for expenses under article 5.14,
section F, of the Texas Business Corporation Act (Aarticle
5.14F@).


This case first went to trial in May of 1996.  On the second day of trial, Phillips and
Olshan settled for $150,000, which went to Ellington Dirt, after deduction for
certain fees and expenses.  Before
submitting the case to the jury, the trial court granted a directed verdict to
Walker Sand on all claims except breach of the lease and negligence.  The trial court also granted a directed
verdict on all claims against Butler and Robeau.  The jury considered the remaining issues and
found Walker Sand breached the lease; however, the jury found the breach was
excused.  The jury found no breach of
fiduciary duty on the part of Delbert Walker and no negligence on the part of
Walker Sand.  Finally, as to the
counterclaim under article 5.14F, the jury found Campbell and the Basses
brought this shareholder derivative suit without reasonable cause.  








The parties agreed to try the amount of attorney=s fees to the court.  Based on its rulings and the jury=s findings, the trial court entered
judgment in favor of appellees on their counterclaim in the amount of
$411,499.  The Basses and Campbell
appealed to this court.  In an
unpublished opinion, this court affirmed in part and reversed and remanded in
part based on the following holdings: (1) the trial court, not the jury, must
determine whether the Basses and Campbell filed this suit Awithout reasonable cause@; (2) the trial court=s failure to conduct a bench trial
regarding appellees= counterclaim was reversible error; (3) the trial court did
not reversibly err when it overruled the plaintiffs= objections to the jury question
regarding excuse of Walker Sand=s breach; (4) there was sufficient evidence that Walker Sand
was excused from performing under the Original Lease based on the Amended
Lease; and (5) the trial court properly granted a directed verdict in favor of
Butler and Robeau.  See Campbell v.
Walker, No.14-96-01425-CV, 2000 WL 19143, at *3B*14 (Tex. App.CHouston [14th Dist.] Jan. 13, 2000,
no pet.) (not designated for publication). 
This court remanded the case in part for a bench trial on the article
5.14F issues.  See id. at *14.

On remand, Campbell settled with appellees for $100,000 and
relinquishment of his stock.  After
conducting a bench trial, the trial court ruled in favor of appellees on their
counterclaim, found the Basses had filed the derivative suit without reasonable
cause, and awarded appellees a total of $311,499 C the same amount of attorney=s fees and expenses awarded in the
first judgment minus the $100,000 settlement credit. 

                                                          Issues Presented

On appeal, the Basses present the following issues:

!         Did the
trial court err in awarding attorney=s fees
under article 5.14F of the Texas Business Corporation Act because the Basses
had Areasonable cause@ to
bring a shareholder derivative suit as a matter of law?

!         Is the
evidence legally sufficient or, alternatively, factually sufficient to support
the trial court=s finding that this shareholder derivative suit was
brought Awithout reasonable cause@ under
article 5.14F of the Texas Business Corporation Act?

!         Do the
trial court=s findings support its conclusion that the Basses
brought this shareholder derivative suit Awithout
reasonable cause@ under article 5.14F of the Texas Business Corporation
Act?

!         Did the
trial court err in failing to properly allocate all offsets and settlement
credits to which the Basses were entitled?

 

                                                     Standard of Review








Article 5.14F provides that, upon final judgment for one or
more defendants and upon a finding that the plaintiffs brought suit against
those defendants Awithout reasonable cause,@ the trial court Amay . . . require the plaintiff to
pay expenses to such defendants.@ 
Act of May 26, 1973, 63d Leg., R.S., ch. 545, ' 37, 1973 Tex. Gen. Laws 1486, 1508B09 (amended 1997) (current version at
Tex. Bus. Corp. Act Ann. art.
5.14J (1) (Vernon Supp. 2002)). 
Therefore, article 5.14F affords the trial court a measure of discretion
in deciding whether to award attorney=s fees.  See Bocquet v. Herring, 972 S.W.2d 19,
20 (Tex. 1998); Pace  v. Jordan,
999 S.W.2d 615, 625B26 (Tex. App.CHouston [1st Dist.] 1999, pet. denied).  Accordingly, we review the trial court=s ruling on a request for expenses
under article 5.14F for an abuse of discretion. See Bocquet, 972 S.W.2d
at 20B21; Pace, 999 S.W.2d at 625B26. 
      Generally, the test for abuse
of discretion is whether the trial court acted without reference to any guiding
rules and principles or whether the trial court acted arbitrarily and
unreasonably.  See McDaniel v.
Yarbrough, 898 S.W.2d 251, 253 (Tex. 1995). 
However, under article 5.14F, the district court=s discretion is limited by the
requirement that the plaintiffs have brought suit without reasonable
cause.  See Act of May 26, 1973,
63d Leg., R.S., ch. 545, ' 37, 1973 Tex. Gen. Laws at 1508B09; Bocquet, 972 S.W.2d at 20B21. 
Therefore, the trial court abuses its discretion if it awards expenses
under article 5.14F without legally and factually sufficient evidence that the
plaintiffs have brought suit without reasonable cause.  See Bocquet, 972 S.W.2d at 20B21; Weingarten Realty Investors v.
Harris Cty. Appraisal Dist., 93 S.W.3d 280, 283 (Tex. App.CHouston [14th Dist.] 2002, no pet.); Hunt
v. Baldwin, 68 S.W.3d 117, 135 n.8 (Tex. App.CHouston [14th Dist.] 2001, no pet.); Pace,
999 S.W.2d at 625B26.

In conducting a legal‑sufficiency analysis, we review
the evidence in a light that tends to support the disputed findings and
disregard all evidence and inferences to the contrary.  Lee Lewis Constr., Inc. v. Harrison,
70 S.W.3d 778, 782 (Tex. 2001).  If more
than a scintilla of evidence exists, it is legally sufficient.  Id. 
More than a scintilla of evidence exists if the evidence furnishes some
reasonable basis for differing conclusions by reasonable minds about a vital
fact=s existence.  Id. at 782B83. 









When reviewing a challenge to the factual sufficiency of the
evidence, we examine the entire record, considering both the evidence in favor
of, and contrary to, the challenged finding. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).  After considering and weighing all the evidence,
we set aside the fact finding only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629,
635 (Tex. 1986).  The trier of fact is
the sole judge of the credibility of the witnesses and the weight to be given
to their testimony.  GTE Mobilnet of
S. Tex. v. Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  We may not substitute our own
judgment for that of the trier of fact, even if we would reach a different
answer on the evidence.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  The amount of evidence necessary to affirm a
judgment is far less than that necessary to reverse a judgment.  Pascouet, 61 S.W.3d at 616. 

                                                                    Analysis

   Did the trial court
abuse its discretion by awarding expenses under article 5.14F?

                                                              Preservation
of Error








The
Basses complain on appeal that the trial court abused its discretion because
there was legally and factually insufficient evidence that they brought suit without reasonable
cause.  Appellees assert the Basses
failed to preserve error under Texas Rule of Appellate Procedure 33.1 because
the Basses did not assert these complaints in the trial court.  See Tex.
R. App. P. 33.1.  We disagree. 
When appealing from a bench trial, an appellant is not required to
preserve error in the trial court regarding complaints that the evidence was
legally or factually insufficient. See Renteria v. Trevino, 79 S.W.3d
240, 241B42
(Tex. App.CHouston [14th Dist.] 2002, no pet.); O=Farrill Avila v. Gonzalez, 974 S.W.2d 237, 248 (Tex. App.CSan Antonio 1998, pet. denied).  Furthermore, the Basses asserted these
complaints in the trial court in their objections to the proposed findings of
fact that the court later adopted.  The Basses preserved error.

                                                      Law-of-the-Case Argument

Appellees also assert that, under the
law-of-the-case doctrine, the Basses cannot attack the legal sufficiency of the
evidence because this court decided that issue against them in the first appeal
in this case.  We disagree.  Although the appellants in the first appeal
did challenge the legal sufficiency of the evidence supporting the jury=s finding that the Basses had no
reasonable cause to bring suit, this court did not rule on that issue in the
first appeal.  Because this court did not
decide this issue in the first appeal, the law-of-the-case doctrine does not
prevent the Basses from asserting the issue now.  See Hudson v. Wakefield, 711 S.W.2d
628, 630 (Tex. 1986).

                                             Merits
of the Basses= First Two Issues

In the first two issues, the Basses
assert that the trial court abused its discretion in awarding expenses under
article 5.14F because there was legally or, in the alternative, factually
insufficient evidence to support the trial court=s finding that the Basses brought
this suit without reasonable cause.  As a
preliminary matter, we must decide the legal standard to be applied to
determine whether the Basses brought suit without reasonable cause under
article 5.14F.  This appears to be an
issue of first impression in Texas.  

The Basses assert that Awithout reasonable cause@ should be interpreted as a
subjective standard, requiring a finding that the plaintiff knew the suit was
groundless at the time he filed it.  In support of this position, the Basses cite decisions
construing the same language under New Mexico, North Carolina, and Tennessee law. See Owen v.
Modern Diversified Indus., Inc., 643 F.2d 441 (6th Cir. 1981) (applying
Tennessee law); White v. Banes Co., 866 P.2d 339 (N.M. 1993); Lowder
v. Doby, 340 S.E.2d 487 (N.C. Ct. App. 1986).








In Lowder, the plaintiffs asserted that Awithout reasonable cause@ means filing a derivative action
without Aa >reasonable belief= that there is a >sound chance= that their claims may be sustained.@ See Lowder, 340 S.E.2d at
493. The Lowder court held that, presuming for the sake of argument that
plaintiffs= legal standard was correct,
plaintiffs still filed suit without reasonable cause. See id. at 493B95. The Lowder court did not
decide what standard should be used for Awithout reasonable cause,@ and the court=s analysis does not support the
subjective standard proposed by the Basses. 
See id.  Likewise, the Owen
court held the trial court correctly construed the Tennessee statute in finding
that plaintiff had brought suit without reasonable cause.  See Owen, 643 F.2d at 444B45. 
The trial court had found that it should have been obvious to plaintiff
that his derivative action lacked merit; however, the trial court expressly
found that plaintiff did not bring the action in bad faith. See id. at
444.  Again, the Owen court did
not decide what standard should be used for Awithout reasonable cause,@ and the court=s opinion does not support a
subjective standard. See id. at 444B45. 


The White case under New Mexico law does support the
subjective standard advocated by the Basses. 
See White, 866 P.2d at 343B44. 
On the other hand, an Arizona case supports an objective standard by
equating the Awithout reasonable cause@ standard for derivative actions with
the standard necessary to assess sanctions under Rule 11 of the Federal Rules
of Civil Procedure.  See Blumenthal v.
Teets, 745 P.2d 181, 188B89 (Ariz. Ct. App. 1987); see also Fed. R. Civ. P. 11.  In sum, the cases from other jurisdictions
are split and do not offer strong guidance on this issue.








After considering the language of article 5.14F and the legal
standards under other similar statutes, we adopt an objective standard and hold
that a plaintiff acts without reasonable cause under article 5.14F if, at the
time he brings suit: (1) plaintiff=s claims in the lawsuit are not
warranted by existing law or a good faith argument for the extension,
modification, or reversal of existing law; or (2) plaintiff=s allegations in the suit are not
well grounded in fact after reasonable inquiry. 
See Tex. Bus. Corp. Act
Ann. art. 5.14J (1)(c) (Vernon Supp. 2002) (defining standard for
requiring parties to pay the expenses of another party under amended Business
Corporation Act that took effect on September 1, 1997 and that does not apply
to this case[4]);
Tex. Civ. Prac. & Rem. Code ' 10.001 B .006 (describing circumstances under
which trial court may order party to pay attorney=s fees and expenses to another party
as a sanction); Tex. R. Civ. P.
13 (defining Agroundless@); Randolph v. Walker, 29
S.W.3d 271, 277B78 (Tex. App.CHouston [14th Dist.] 2000, pet. denied) (involving
groundlessness under Texas Rule of Civil Procedure 13); Selig v. BMW of N.
Am., Inc., 832 S.W.2d 95, 103 (Tex. App.CHouston [14th Dist.] 1992, no writ)
(involving groundlessness under DTPA).








Under this legal standard, we conclude that the evidence at
trial was legally and factually sufficient to support the trial court=s finding that the Basses brought
suit without reasonable cause.  The
Basses assert there was Aabsolutely no evidence@ to support this finding because (1)
at the time they brought suit, Walker Sand had breached the Original Lease, as
shown by the jury=s finding that Walker Sand breached the Original Lease; (2)
the Basses recovered $150,000 for Ellington Dirt as a result of settling their
claims against Phillips and Olshan in this suit; (3) the Basses investigated
the allegations in the original petition before bringing suit, as shown by
various steps that they took to determine if materials from Phillips had been
dumped on the Property; (4) before filing suit, the Basses reviewed the
provisions of the Original Lease and consulted with three attorneys about the
merits of this suit; (5) the Basses discussed concerns about the dumping of
Phillips material on the Property with Robeau; and (6) the Basses sent a
November 9, 1990 demand letter to Walker as agent for the board of directors. 








As to Walker Sand=s alleged breach of the Original
Lease, the Basses argue that the parties had not yet amended the Original Lease
when the Basses filed suit and that the breach the jury found therefore had not
yet been excused.  The Basses emphasize
that their primary allegation was that Walker Sand had breached the Original
Lease.  We disagree.  As previously noted, the original petition
makes no reference to the Original Lease, nor does it contain any claim for
breach of that lease.  In the original
petition, the Basses stated that Delbert Walker and Walker Sand had used the
Property and allowed others to use the Property for their own financial gain,
without compensating Ellington Dirt.  The
Basses also alleged that these uses of the Property had greatly impaired its
market value and subjected the Aowners [sic] of the [Property]@ to increased liability.  The demand letter the Basses sent before
filing suit does not refer to the Original Lease or any breach of it.  The only conduct the Basses complain of in
this letter is Ellington Dirt=s failure to file suit against Walker Sand Aand any and all other parties
responsible for the dumping of refuge [sic], garbage, concrete, waste, poles,
containers and other debris on the [Property].@ 
The letter states that A[t]his >dumping= activity has significantly depreciated the value of the
corporation=s one major asset and has opened the
door to potential liability in the event any of the waste or refuse is toxic.@ 
Though the Basses later amended the petition to assert breach of the
Original Lease, the determination under article 5.14F is made as of the time
that they brought suit C February 28, 1991.[5]  See Act of May 26, 1973, 63d Leg.,
R.S., ch. 545, ' 37, 1973 Tex. Gen. Laws at 1508B09. 
The demand letter, the evidence at trial, and the language of the
original petition all show that the Basses= primary concern was that there might
be significant environmental liability because of the dumping of the Phillips
materials on the Property.  

Nonetheless, Edward Bass testified at trial that, at the time
of his deposition in May  of 1995, the
only information he had was that the material dumped on the Property from the
Phillips site was Aconcrete, rebar and dirt.@ 
There was evidence that, before May of 1995, the Basses= environmental expert had visited the
Property, taken samples, had tests performed, and issued a report.  Edward Bass also testified to the following
at this deposition:  (1)  as of 1992, he had not asked anyone to do any
kind of study to determine whether the activities on the Property were
dangerous, toxic, or in violation of any laws; (2) he filed this suit without
doing any tests to find out whether the activity on the Property violated any
laws; and (3) he had no knowledge that this concrete, rebar, and dirt was ever
in contact with contaminated water. 
Walker testified that he invited Campbell, the Basses, and any other
stockholder to inspect the Property themselves or to bring their own experts to
test the Property to find out if there were problems, and there was testimony
from Campbell corroborating this invitation and his failure to accept it.  The evidence shows that, rather than attempt
to test the Property and evaluate the potential environmental liability, if
any, Edward Bass and Travis Campbell resigned as directors.  The Basses and Campbell then filed this
suit.  








When the Basses finally did send an expert to examine the
Property, the expert, Dianna Chianis, performed what she described as a Aquick look-see@ that did not rise to the level of a
Phase 1 environmental investigation and was not even an investigation per se.
Chiannis stated that Edward Bass asked her to visually inspect the Property and
take some samples.  She testified that
the groundwater samples she took exceeded maximum contaminant levels
established by the Texas Natural Resource Conservation Commission under Risk
Reduction Rule Number 2, for cleaning up sites to protect human health and the
environment.  Chiannis concluded in her
report that industrial waste had been deposited onto the Property improperly,
without a permit; however, Chiannis testified that she defines Aindustrial waste@ to mean Aanything that comes from an
industrial facility,@ including dirt, cement, rebar, and water.  

Chiannis did not do any corings or borings on the
Property.  She testified that her soil
samples had acceptable levels of possible contaminants.  She stated that she was never able to
determine whether any of the material she saw on the Property came from Phillips.  Chiannis stated that the Risk Reduction Rules
probably do not require remediation of the Property.  She also testified that before collecting
samples for testing, she did not wash the backhoe she used to gather soil and
that she did not know whether anyone else had done so.              Appellees= expert, William Wilson, performed a
Phase 1 and a Phase 2 environmental investigation for a nonparty who purchased
part of the Property.  At the time that
he performed his sampling and testing, Wilson was not aware of this lawsuit and
had not been retained by any party. 
Wilson performed more extensive testing than Chiannis, including coring.
Wilson concluded that the Property had no contamination or pollution, that the
levels for over 300 chemical compounds were not above background limits, and
that none of the results were above the Texas industrial recommended action
level that would require reporting to an environmental agency.  Wilson testified that the maximum contaminant
level used by Chiannis for her groundwater sample was a standard from the Safe
Drinking Water Act.  Wilson testified
that this standard is a high standard to be used for drinking water and that it
was not a fair standard to use for water found on an industrial property.  According to Wilson, Safe Drinking Water Act
levels are commonly below background environmental levels.  Wilson criticized the methods that Chiannis
used to collect her samples, stating, for example, that some of the water
tested was laced with paint and that Chiannis should have made sure the backhoe
was decontaminated before and after each sampling event.  Wilson testified that concrete and rebar are
not hazardous materials.  








We find there was sufficient evidence that the Basses did not
conduct a reasonable prefiling inquiry into whether the allegations in the
original petition were well grounded in fact. 
Furthermore, we find that, upon such an inquiry, they would have
discovered that these claims were not well grounded in fact because the dumping
on the Property did not create any material risk of environmental
liability.  

The settlement with Phillips and Olshan is not material to
whether the Basses had reasonable cause to bring suit against Walker and Walker
Sand because that settlement involved different defendants and occurred after
the Basses brought suit.  Though the
Basses took some steps before suit to investigate the dumping, this
investigation showed only that materials from Phillips had been dumped, not
that this material was hazardous or toxic or was likely to give rise to
environmental liability.  Likewise,
though the Basses= conversations with Robeau and their statements at two
meetings of shareholders show their concern that there might be some risk of
environmental liability because of the dumping of the Phillips materials, these
conversations are not strong evidence of a reasonable prefiling inquiry
concerning the nature and extent, if any, of that liability.








Jerre Frazier, who has been Edward Bass=s attorney for approximately 36
years, testified that Edward Bass told him he had learned that materials from
Phillips had been dumped on the Property and that he was concerned about
environmental liability.  This exchange
is not strong evidence of a reasonable investigation either.  Although Frazier subsequently served as the
Basses= counsel of record for an Ainterim period,@ he did not represent the Basses in
the preparation and filing of the original petition.  Frazier was living in Nashville, Tennessee
and practicing law there at the time the Basses filed this suit.  Though Frazier did testify that the
defendants refused the Basses= requests to conduct environmental testing on the Property,
his testimony indicates that this occurred after the Basses brought suit.  Furthermore, Edward Peine, defense counsel
for Ellington Dirt, Robeau, and Butler, testified that he repeatedly invited
the Basses= counsel to inspect the Property and
that at least six times various lawyers for the Basses postponed appointments
to inspect the Property.  Peine testified
that he also invited Frazier to inspect the Property and that he did not oppose
the Basses= request for a court order to inspect
the Property.  Peine testified that
Phillips and Olshan wanted the trial court to sign an order compelling the
inspection and that this was the reason for a court-ordered inspection of the
Property.  

As for the claims in the original petition against Delbert
Walker, Walker testified that he always put the interests of Ellington Dirt
first.  Counsel for the Basses also
asserted in his closing argument that the claims against the individuals C Walker, Butler, and Robeau C did not increase the attorney=s fees.  In addition, there was evidence that the
actions taken by Walker and Walker Sand were authorized or ratified by the
board of directors or a majority of the shareholders of Ellington Dirt.  Though the Basses and Campbell may have
disapproved, they were minority shareholders, and thus subject to being
outvoted regarding corporate issues.  And
though minority shareholders may properly file derivative suits in certain
circumstances, they may not seek to change corporate policies of which they
disapprove by filing derivative claims without reasonable cause.  See Tex.
Bus. Corp. Act art. 5.14; Act of May 26, 1973, 63d Leg., R.S., ch. 545, ' 37, 1973 Tex. Gen. Laws at 1508B09.








Considering the evidence in a light that tends to support the
disputed findings and disregarding all evidence and inferences to the contrary,
we conclude that the record contains legally sufficient evidence to support the
trial court=s finding that the Basses brought
this suit without reasonable cause.  The
evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about whether (1) the negligence, breach of fiduciary duty,
bad faith, and fraud claims the Basses asserted in the original petition were
warranted by existing law or a good faith argument for the extension,
modification, or reversal of existing law or (2) the allegations in the
original petition were well grounded in fact after reasonable inquiry.  See Lee Lewis Constr., Inc., 70
S.W.3d at 782; Hughes v. Houston Northwest Med. Ctr., Inc., 680 S.W.2d
838, 843 (Tex. App.CHouston [1st Dist.] 1984, writ ref=d n.r.e.) (holding there was
factually sufficient evidence to support finding of no reasonable cause under
article 5.14F when evidence showed that a reasonable inquiry by plaintiffs
before filing suit would have shown no reasonable cause to bring a derivative
suit). Considering and weighing all evidence in the record, we conclude that
the trial court=s finding that the Basses brought suit without reasonable
cause is not so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  See Cain,
709 S.W.2d at 176; Hughes, 680 S.W.2d at 843.  Therefore, the evidence is legally and
factually sufficient to support the trial court=s finding that the Basses brought
this suit without reasonable cause.   

The Basses do not assert that the trial court abused its
discretion in any way other than basing its ruling on this finding that
allegedly was not supported by legally or factually sufficient evidence.
Therefore, we hold that the trial court did not abuse its discretion by
awarding expenses under article 5.14F. 
Accordingly, we overrule the Basses= first and second issues.

                           Do the Basses assert
reversible error in the third issue?

In the third issue, the Basses assert
the trial court=s findings of fact were not relevant to the issue of whether
they brought suit without reasonable cause. 
The trial court found that the Basses commenced this suit without
reasonable cause and found the amounts of 
appellees= expenses.  Presuming
for the sake of argument that the other findings were not relevant to appellees= counterclaim under article 5.14F,
the Basses still have not shown that this alleged error probably caused the
rendition of an improper judgment.  See
Tex. R. App. P. 44.1; Johnston
v. McKinney Am., Inc., 9 S.W.3d 271, 277B78 (Tex. App.CHouston [14th Dist.] 1999, pet.
denied).  Because the Basses have not
shown reversible error, we overrule the third issue.  








                              Did the Basses
preserve error as to the fourth issue?

In the fourth issue, the Basses
assert the trial court erred by giving a credit of only $100,000 rather than
$205,724.50, based on Campbell=s settlement.  However,
the Basses do not cite and we have not found any place in the record where they
asserted this complaint in the trial court. 
Further, during closing argument, the Basses= counsel specifically requested that
the trial court apply a settlement credit of $100,000 in the event the court
awarded expenses.  Therefore, the Basses
invited the trial court to make the alleged error they now assert on
appeal.  We conclude that the Basses have
not preserved error on their challenge to the settlement credit based on
Campbell=s settlement.  See Tex.
R. App. P. 33.1; Pascouet, 61 S.W.3d at 612, 620 (finding waiver
when party asserted as error action taken by trial court at party=s request and also finding no
preservation of error when party did not assert appellate complaint regarding
settlement credit in trial court).  

Under this issue, the Basses also assert that the trial court
erred by not giving them credit for $9,000 that appellees allegedly received
from a security bond posted by the plaintiffs. 
The Basses= counsel did state during closing argument that it was his
understanding defendants had drawn on a $9,000 security bond posted by
plaintiffs.  However, the Basses did not
complain of the failure to credit this amount in the judgment by any motion,
objection, or request, and the trial court did not rule on any such motion,
objection, or request, either expressly or impliedly.  Therefore, the Basses also have failed to
preserve error as to this alleged credit. 
See Tex. R. App. P. 33.1;
Rush v. Barrios, 56 S.W.3d 88, 106 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  Accordingly, we overrule their
fourth issue.  








Having overruled all of
the Basses= issues, we affirm the trial court=s judgment.

 

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered, Opinion of November 7, 2002 Withdrawn,  and Substitute Opinion filed March 6, 2003.

Panel consists of Chief Justice Brister and Justices Anderson and
Frost.

 

 











[1]           Dr. Barfield=s shares were ultimately purchased by Walker.  





[2]  In the
statement-of-facts section of their brief, appellants state that they both
filed this derivative suit on February 28, 1991.  Appellees agree with this statement in their
brief.  Therefore, we accept this
statement as true.  See Tex. R. App. P. 38.1(f).  Further, because appellants do not
distinguish between Edward Bass and Cary Bass in their arguments on appeal, we
will generally refer to appellants collectively as the ABasses.@  





[3]  Butler
acquired her shares in Ellington Dirt upon the death of her husband, Dr. E. C.
Butler,  one of the original
investors.  





[4]  We are not
applying the current article 5.14J of the Texas Business Corporation Act to
this case, nor are we applying Chapter 10 of the Texas Civil Practice and
Remedies Code, the DTPA, or Rule 13 of the Texas Rules of Civil Procedure.  Rather, in determining the standard for Awithout reasonable cause@ under
article 5.14F, we consider these other statutes on the same or similar
subject.  See Calvert v. Audio Center,
Inc., 346 S.W.2d 420, 423 (Tex. Civ. App.CAustin
1961, writ ref=d n.r.e.) (holding court may consider amended statute
in construing prior statute); Texas Co. v. Schriewer, 38 S.W.2d 141, 143
(Tex. Civ. App.CWaco 1931) (stating that, in construing a statute,
courts may consider other statutes on the same or similar subject), aff=d in part, rev=d
in part on other grounds, 53 S.W.2d
774 (Tex. Com. App. 1932, holding approved).    
  





[5]  The Basses
agree in their brief that the time frame for this inquiry is the date they
brought suit.  Further, the evidence at
trial showed, and the Basses agreed in the trial court and on appeal, that
adding Butler and Robeau to this suit did not increase the amount of attorney=s fees incurred at all.  Therefore, we do not address whether the
Basses had reasonable cause to bring suit against Butler and Robeau.