

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00088-CV
_____

JOHN T. GONZALES, APPELLANT

V.

ALICIA POUNDS, APPELLEE

On Appeal from the 53rd District Court
Travis County, Texas
Trial Court No. D-1-FM-18-000396; Honorable Jan Soifer, Presiding

February 4, 2022

MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

This appeal involves post-divorce enforcement matters surrounding the dissolution of the marriage between Appellant, John T. Gonzales, and Appellee, Alicia Pounds. Gonzales appeals the trial court's *Order on Motion for Enforcement* entered in the underlying cause following a hearing on competing motions for enforcement of the parties' *Agreed Final Decree of Divorce.* The trial court's order found that the present unpaid

balance of an "equalization judgment" owed by Pounds to Gonzales under the terms of the original decree was $200,285.28; however, the trial court ordered that the unpaid balance be reduced or offset by (1) $86,237.56 for Gonzales's one-half of the parties' 2017 tax liability, (2) $30,572.00 for the penalties and interest accrued on the parties' 2017 federal taxes paid, (3) $14,220.00 for attorney's fees paid by Pounds to Walters Gilbreath, PLLC, (4) $17,590.00 for attorney's fees paid by Pounds for Five Stone Tax Advisers, and (5) $3,818.25 for Gonzales's one-half of the fees paid to John Knox for preparation of the parties' 2017 joint federal tax return. Via this appeal, Gonzales challenges the trial court's order through eight issues.[1] We will affirm in part and reverse and remand in part.

### BACKGROUND

Gonzales filed for divorce on January 22, 2018, and an *Agreed Final Decree of Divorce* was subsequently entered on March 7, 2019. The decree made provisions for the conservatorship and support of three minor children and the division of the community estate of the parties. Pursuant to that decree, Pounds was awarded a business; however, she was required to pay Gonzales for his community interest in that business. To that end, Gonzales was granted an "equalization judgment" in the amount of $770,000, secured by Pounds's primary residence and certain other rental properties awarded to her by the decree. Pounds was also required to pay the equalization judgment in monthly installments of $23,333, with a three percent interest rate beginning February 1, 2019.

---

[1] Originally appealed to the Third Court of Appeals, sitting in Austin, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Third Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

Pounds paid those installments to Gonzales until March 2020. Pounds defaulted on the payments and an acceleration clause in the periodic payment agreement contained in the decree was triggered, causing the full amount of the judgment to become immediately due and payable.[2]

Per the parties' agreement, an accountant, John Knox, was to prepare the parties' tax returns. Knox prepared for the parties both their corporate and individual returns. At issue here is the 2017 federal joint tax return, the last joint tax return due for income earned prior to the divorce. The parties incurred a tax liability of approximately $199,000 for that tax year. The *Decree* set forth that Pounds was to pay an initial $60,000, plus penalties and interest "arising solely out of the failure to previously make the $60,000 payment to the Internal Revenue Service." The parties were then to each pay one-half of the remaining tax liability, plus any penalties and interest. Knox prepared the 2017 tax return on June 10, 2019. Pounds immediately provided her consent to Knox to file the return. However, Gonzales did not. Due to his expertise as a tax consultant, Gonzales requested certain documents to review before consenting to the filing of their return. Evidence presented at trial showed he received those documents in the summer of 2020[3] and within a week, he informed Knox and Pounds that he found additional medical expenses of $6,000 and $111,962 in standard deductions, giving the parties a tax credit

---

[2] Gonzales testified he attempted foreclosure proceedings but was unable to do so due to COVID-19 restrictions. He told the court he had incurred over $10,000 in attorney's fees as part of that process.

[3] The parties disagree as to which of them caused the delay. Pounds contends Gonzales refused to respond to inquiries regarding his consent to file the 2017 tax return, but Gonzales contends he could not access or obtain the documents he requested from Pounds for well over a year. After hearing evidence, the trial court determined it was Gonzales's inaction that caused the delay.

3

of approximately $58,250. Gonzales finally provided consent to file the 2017 tax return the day before the hearing in this matter.

Pounds testified that she defaulted on the payments to Gonzales in March 2020 because without the 2017 tax return she could not refinance her properties and thus had to choose whether to meet her payroll obligations for the business or to pay Gonzales. She admitted that at one point, she told Gonzales she was diverting the monthly payments due to him to the IRS but later acknowledged that was untrue.

To secure payment of the $770,000 equalization judgment, an owelty lien[4] was placed on the real property that was awarded to Pounds in the division of assets. At Pounds's request, the trial court also ordered that any money from the sale of that real property be placed in a trust account. Pounds sold her primary residence in August 2020 and the proceeds from that sale were placed in that trust account. Thereafter, the parties filed competing motions for enforcement of the *Agreed Final Decree of Divorce* and disposition of the money in that trust was delayed until such time as the trial could determine whether Pounds was entitled to any offsets.

The trial court held a hearing on the parties' motions in October 2020.[5] Through that hearing, Pounds sought to offset the judgment owed to Gonzales by one-half of the

---

[4] An owelty is the difference in value that results when a court divides real property into shares of unequal value in partition proceedings. *McNally v. McNally*, No. 02-18-00142-CV, 2020 Tex. App. LEXIS 7211, at *17-18 (Tex. App.—Fort Worth Sept. 3, 2020, pet. denied) (mem. op.) (citation omitted). The court may then order an owelty payment to equalize the shares' value and impose a lien on the greater share in favor of the recipient of the lesser share to secure the owelty payment. *Id.* (citation omitted). "Application of the doctrine of owelty is limited to those cases in which partition in kind is adjudged." *Id.* (citing *Rodriguez v. Rivas*, 573 S.W.3d 447, 453 (Tex. App.—Amarillo 2019, no pet.); *Travelers Ins. Co. v. Nauert*, 200 S.W.2d 661, 665 (Tex. App.—El Paso 1941, no writ) ("In case there be a partition in kind, owelty may be adjudged to achieve a fair and equitable partition.")).

[5] The hearing was held via Zoom in accordance with COVID-19 protocols.

remaining tax liability owed as well as by other fees, including attorney's fees. By that time, Pounds had filed a separate tax return for 2017 and had entered a payment plan with the IRS by which she paid $1,000 per month until February 2021, after which she was to pay $23,000 per month.[6] Pounds asked the trial court to order the filing of the 2017 joint tax return, to deduct $94,000 (one-half of remaining tax liability) from the equalization judgment, to hold Gonzales responsible for the late penalties and interest,[7] and to require Gonzales to pay one-half of monies she paid to Knox as well as one-half of the attorney's fees she had incurred.

Gonzales asked the trial court to find that Pounds failed to timely pay her installment payments to him and failed to cure the default by paying the full amount once it was accelerated. He also asked the trial court to award to him the full amount held in the trust account from the sale of Pounds's residence as partial payment on the accelerated equalization judgment. Third, he requested that the trial court award him reasonable and necessary attorney's fees as they related to the enforcement motions. Lastly, he asked the trial court to allow him discretion to enter a payment plan with the IRS or to negotiate and pay a lower lump sum to satisfy his tax liability to the IRS.

---

[6] Pounds testified that Gonzales does not pay on his obligations, and accordingly, she believed a payment plan with the IRS was inadvisable. In the event Gonzales did not pay his IRS obligations, the IRS would be entitled to seek payment from her. She owned properties and other assets while Gonzales owned only a home and two rather invaluable vehicles.

[7] Testimony at the hearing indicated that had Gonzales consented in June 2019 to the filing of the 2017 tax return, the parties would not have incurred the additional late penalties and interest.

At the conclusion of the hearing, the trial court asked each party to submit attorney's fees requests and written closing arguments by the Friday of the following week.

Two months after the hearing, the trial court entered its *Order on Motion for Enforcement.* In it, it denied the relief Gonzales requested and stated the following:

IT IS ORDERED that the equalization judgment owed from ALICIA POUNDS to JOHN GONZALES under the parties' *Agreed Final Decree of Divorce* is currently $200,285.28 (after the payment of $40,000.00, which JOHN GONZALES has already received).

IT IS ORDERED that the above-mentioned equalization judgment shall be offset by the following judgments against JOHN GONZALES:

a. $86,237.56 for JOHN GONZALES' one-half of the parties' 2017 tax liability (to be paid directly to the IRS);

b. $30,572.00 for the penalties and interest accrued on the parties' 2017 taxes since June 15, 2019 (to be paid directly to the IRS);

c. $14,220.00 for Walters Gilbreath, PLLC's' attorney's fees;

d. $17,590.00 for Five Stone Tax Advisers' attorney's fees; and

e. $3,818.25 for JOHN GONZALES' one-half of the fees due to John Knox for preparation of the parties' tax returns.

As a result of the above offset, IT IS THEREFORE ORDERED that the equalization judgment currently due from ALICIA POUNDS to JOHN GONZALES is $47,847.47. IT IS ORDERED that this amount shall be paid to JOHN GONZALES from the funds currently held in trust with Evans Family Law Group.

IT IS ORDERED that after the payment of $86,237.56 and $30,572.00 directly to the IRS from the funds held in trust with Evans Family Law Group, any remaining amount held in Evans Family Law Group trust account shall be paid to ALICIA POUNDS.

ALICIA POUNDS is ORDERED to pay the IRS directly for her one-half of the parties' 2017 tax liability being $86,237.56, as well as one-half of any

6

and all remaining penalties and interest owed on the parties' 2017 taxes after JOHN GONZALES has made his $30,572.00 payment.

Thereafter, Gonzales filed with the trial court a request for findings of fact and conclusions of law. The court entered its findings and conclusions on January 28, 2021. Gonzales also filed a motion for new trial and a request for a temporary restraining order. Gonzales then appealed the trial court's order, bringing eight issues before this court. Pounds did not favor this court with a brief.

### ANALYSIS

### STANDARD OF REVIEW

When reviewing a decree of divorce, a trial court's property division is reviewed under an abuse of discretion standard. *Swaab v. Swaab*, 282 S.W.3d 519, 524 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.). Likewise, a trial court's ruling on a post-decree motion to enforce or clarify a decree of divorce is reviewed under an abuse of discretion standard. *In re Marriage of McDonald*, 118 S.W.3d 829, 832 (Tex. App.—Texarkana 2003, pet. denied).

In a family law case, legal and factual sufficiency of the evidence are not independent grounds for reversal, but they are relevant factors in assessing whether the trial court abused its discretion. *Moore v. Moore*, 383 S.W.3d 190, 198 (Tex. App.—Dallas 2012, pet. ref'd). To determine whether the trial court abused its discretion because the evidence was either legally or factually insufficient to support a trial court's discretionary decision, we consider whether the trial court: (1) had sufficient evidence on which to exercise that discretion or (2) erred in the application of that discretion. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). We conduct the

applicable sufficiency review when considering the first prong of the test. *Id.* (citation omitted). We then determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* (citation omitted). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Id.* (citation omitted).

In an appeal from a bench trial, the trial court's findings of fact have the "same force and dignity" as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). As such, we review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used to determine whether sufficient evidence exists to support an answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). We review the trial court's conclusions of law *de novo*. *Smith v. Smith*, 22 S.W.3d 140, 143-44 (Tex. App.—Houston [14th Dist.] 2000, no pet.). In that regard, we will follow a trial court's conclusion of law unless it is erroneous as a matter of law. *Id.* at 144.

A party appealing from a non-jury trial in which the trial court made findings of fact and conclusions of law should direct a sufficiency of the evidence attack at specific findings of fact, rather than at the judgment as a whole. *Betancourt v. Ohmer*, No. 09-18-00121-CV, 2019 Tex. App. LEXIS 323, at *7-8 (Tex. App.—Beaumont Jan. 17, 2019, no pet.) (mem. op.) (citing *Nw. Park Homeowners Ass'n, Inc. v. Brundrett*, 970 S.W.2d 700, 704 (Tex. App.—Amarillo 1998, pet. denied)).

A challenge to an unidentified finding of fact may be sufficient if we can fairly determine from the argument the specific finding of fact that the appellant challenges.

*Betancourt*, 2019 Tex. App. LEXIS 323, at *8 (citing *Shaw v. Cty. of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied) (citing *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex. 2005)). Although here Gonzales fails to challenge any specific finding of fact in any of the discussions of his issues, we can fairly determine from the arguments which findings Gonzales is challenging.

### ISSUE ONE—ABUSE OF DISCRETION REGARDING PENALTIES AND INTEREST ACCRUED

Through his first issue, Gonzales argues the trial court abused its discretion by ordering him to pay one hundred percent of the penalties and interest that accrued on the parties' 2017 tax liability from June 10, 2019, until the date of the enforcement hearing. He contends this order improperly modified or changed the agreed-upon division of property set forth in the *Agreed Final Decree of Divorce.*

Gonzales argues the trial court abused its discretion in making this order "especially when [Gonzales's] reasonable efforts to review the underlying documentation resulted in a reduction in tax liability exceeding $106,000." He further argues that the Family Code is "very clear that the trial court lacks the authority to modify or amend the Final Decree." TEX. FAM. CODE ANN. §§ 9.002, 9.007(a) (West 2020). *See also Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005) (orig. proceeding) (a trial court abuses its discretion when it fails to analyze or apply the law correctly). He says the trial court did so here because it "carved out additional obligations" that resulted in additional debts being awarded to him.

An agreed property division incorporated into a final divorce decree is treated as a contract and is controlled by the rules of construction applicable to ordinary contracts.

*Gulliksen v. Gulliksen*, No. 02-20-00203-CV, 2021 Tex. App. LEXIS 3493, at *6 (Tex. App.—Fort Worth May 6, 2021, no pet.) (mem. op.) (citing *Howard v. Howard*, 490 S.W.3d 179, 184 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citing *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986)). "The same rules of interpretation apply in ascertaining the meaning of judgments as in ascertaining the meaning of other written instruments." *Cortez v. Chapa*, No. 13-19-00193-CV, 2021 Tex. App. LEXIS 284, at *15-16 (Tex. App.—Corpus Christi Jan. 14, 2021, no pet.) (mem. op.) (citing *Treadway v. Shanks*, 110 S.W.3d 1, 6 (Tex. App.—Dallas 2000, pet. granted), *aff'd*, 110 S.W.3d 444 (Tex. 2003) (citing *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404-05 (Tex. 1971)). Whether a written instrument is ambiguous is a question of law. *Cortez*, 2021 Tex. App. LEXIS 284, at *15-16 (citing *Pathfinder Oil & Gas, Inc. v. Great Western Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019)). "A document is ambiguous only when the application of pertinent rules of interpretation results in genuine uncertainty as to which one of two or more meanings is proper." *Cortez*, 2021 Tex. App. LEXIS 284, at *16 (citing *Treadway*, 110 S.W.3d at 6 (citing *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (Tex. 1951)). A written instrument "is not ambiguous simply because the parties disagree over its meaning." *Cortez*, 2021 Tex. App. LEXIS 284, at *16 (citing *Dynegy Midstream Servs., Ltd. P'shp v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009) (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).

If the written instrument can be given a certain or definite legal meaning or interpretation, then there is no ambiguity, and the court will construe the instrument as a matter of law. *Cortez*, 2021 Tex. App. LEXIS 284, at *16 (citing *Pathfinder*, 574 S.W.3d

at 889; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). Our primary objective is to give effect to the instrument's written expression. *Cortez*, 2021 Tex. App. LEXIS 284, at *16 (citing *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)). "[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not." *Cortez*, 2021 Tex. App. LEXIS 284, at *16 (citing *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) (citing *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998)). We interpret the language of a written instrument "according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise." *Cortez*, 2021 Tex. App. LEXIS 284, at *16 (citing *URI, Inc.*, 543 S.W.3d at 764 (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).

We agree that the trial court does not have the authority to alter, amend, modify, or change the division of property made or approved in the decree of divorce or alter or change the substantive division of the property. TEX. FAM. CODE ANN. § 9.007(a). The trial court "may specify more precisely the manner of effecting the property division previously made or approved if the substantive division of the property is not altered or changed." TEX. FAM. CODE ANN. § 9.006(b) (West 2020). The question before us, then, is whether the trial court's order that Gonzales alone pay the penalties and interest assessed against the tax liability of the couple from June 2019 to the date of the enforcement hearing altered, amended, modified, or changed the division of the property set forth in the *Agreed Final Decree of Divorce* or whether it merely clarified or enforced the agreement.

11

The divorce decree states, as it pertains to 2017 tax liability, that Gonzales and Pounds:

> shall be fifty percent (50%) responsible for the payment of any additional tax liability, *including any penalty and interest remaining* after the payment of the $60,000.00 by ALICIA POUNDS. IT IS ORDERED that John Knox, CPA[,] shall determine the amount each party shall pay pursuant to the terms of the Arbitration Award dated February 19, 2019.

(Emphasis added).

Taking into consideration the rules concerning interpretation of written agreements, we note the plain language of the decree clearly provides that Gonzales and Pounds agreed that each party would pay fifty percent of the 2017 tax liability, *including any penalty and interest* remaining after Pounds's $60,000.00 payment. The parties' intent is clear and unambiguous. However, at the time of the entry of the decree, the parties had not incurred the additional $30,572.00 in penalties and interest because the filing of the 2017 tax return had not yet been delayed. By the time of the enforcement hearing, however, the filing had been delayed for a long period of time. The trial court heard evidence that the delay was due solely to Gonzales's inaction and set forth in its conclusions of law that "JOHN GONZALES'S inaction since June 15, 2019 caused the accrual of penalties and interest on the parties' 2017 federal income tax liability in an amount of $30,572.00; thus, the Court ordered JOHN GONZALES to pay these penalties and interest." While, based on the record before us, we can see the equities the trial court may have been trying to address, the agreement of the parties was clear and unambiguous—each party was to pay one-half of any penalty and interest remaining after Pounds's $60,000.00 payment. To the extent that the trial court ordered otherwise, it altered or amended both the agreement of the parties and the prior decree of divorce and,

12

in doing so, it acted without reference to any guiding rules or principles. As such, it abused its discretion. Gonzales's first issue is sustained.

### ISSUE TWO—ABUSE OF DISCRETION IN ORDERING GONZALES TO PAY TAX LIABILITY IMMEDIATELY OUT OF FUNDS RECEIVED IN EQUALIZATION JUDGMENT

Via his second issue, Gonzales argues the trial court abused its discretion when it credited as an offset his one-half of the parties' 2017 tax liability against the outstanding balance of the equalization judgment and authorized the Evans Family Law Group, to pay those sums directly to the IRS. He argues this modified the property division set forth in the divorce decree in violation of section 9.007(a) of the Family Code. *See* TEX. FAM. CODE ANN. § 9.007(a). In addition, Gonzales argues, the court permitted Pounds to enter into a monthly installment plan with the IRS that would result in additional penalties and interest for which he could be liable.

Gonzales asserts that the ruling of the trial court was not an attempt to clarify the divorce decree but rather was "castigatory in nature" and exceeded the authority of the trial court, given that there was no time standard for making any payment to the IRS in the *Agreed Final Decree of Divorce.* Moreover, Gonzales contends, Pounds never completed personal service on him as it related to the enforcement pleading and accordingly, she was precluded from obtaining a contempt ruling against him.

Here, we disagree with Gonzales's contentions. First, the trial court's order does not impose any financial or monetary obligation that did not previously exist, and, as such, Gonzales has not identified any new obligation imposed by the trial court's order that was not already present in the divorce decree. *Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 819 (Tex. App.—Dallas 2008, no pet.). The plain language of the divorce decree

13

indicates the parties agreed that each party was responsible for one-half of the couples' 2017 tax liability. Because the decree did not specifically state how that payment was to be made, the trial court's order simply clarified and enforced the obligation already set forth in the decree. The imposition of a specific time and manner for Gonzales to pay his existing obligation did not alter, amend, modify, or change the underlying property division. *Gills v. Harris*, No. 11-15-00018-CV, 2017 Tex. App. LEXIS 908, at *6 (Tex. App.—Eastland Feb. 2, 2017, no pet.) (mem. op.) (citing *Hollingsworth*, 274 S.W.3d at 819).

Further, it is irrelevant that Pounds had previously entered into a payment plan with the IRS to pay her one-half of the parties' 2017 tax liability as she was attempting to fulfill her responsibility under the parties' *Agreed Final Decree of Divorce.* Nevertheless, the trial court also ordered Pounds to "pay the IRS directly for her one-half of the parties' 2017 tax liability being $86,237.56, as well as one-half of any and all remaining penalties and interest owed on the parties' 2017 taxes after JOHN GONZALES has made his $30,572.00 payment." As such, there was no payment plan from which additional penalties and interest could result. Lastly, we note no contempt ruling was made against Gonzales. Accordingly, we overrule Gonzales's second issue.

### ISSUE THREE—ABUSE OF DISCRETION IN AWARD OF EQUALIZATION JUDGMENT WITHOUT THREE PERCENT INTEREST

By his third issue, Gonzales argues the trial court abused its discretion by modifying the property division as set forth in the *Agreed Final Decree of Divorce*, violating section 9.007(a) of the Family Code, when it determined the unpaid balance of the

14

equalization judgment awarded to him, without including the three percent interest as ordered in the decree.

During the hearing, Pounds told the court the total amount owed to Gonzales was $200,285.28, taking into consideration a $40,000.00 payment she previously made to him. Gonzales, on the other hand, told the court that Pounds owed him $223,325.11, taking into consideration the three percent interest Pounds owed to Gonzales, as provided for in the decree. Because the trial court found Pounds owed to him $200,285.28, Gonzales argues, it erred because that figure did not include the required three percent interest for the period of time at issue.

The *Agreed Final Decree of Divorce* included a provision concerning the equalization judgment that read, "By agreement of the parties, such judgment shall be without penalty for pre-payment and interest on such judgment shall be abated until February 1, 2019. Thereafter, IT IS ORDERED that beginning on February 2, 2019 said money judgment shall incur three percent (3%) statutory interest."

We apply the standards of interpretation of written judgments here as set forth in our discussion of Gonzales's first issue. In doing so, we find the plain language of the decree provides that a three percent interest should be imposed on the remaining balance of the equalization judgment. Because the trial court's order failed to include that interest, we find the trial court erred. We sustain Gonzales's third issue.

**ISSUE FOUR—ABUSE OF DISCRETION IN DETERMINING INTEREST AND PENALTIES IN ABSENCE OF EXPERT TESTIMONY**

In his list of appellate issues, Gonzales sets forth a statement that the trial court abused its discretion in determining the interest and penalties related to the parties' 2017 tax liability from June 10, 2019, through the enforcement hearing was $30,572.00 because there was no expert testimony provided. Gonzales does not, however, set forth any argument or cite any legal authority in his appellate brief on this issue. His argument proceeds from a discussion of issue three to a discussion of issues five and six. As such, he has presented nothing for our review and has waived this issue. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 460 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (finding waiver of appellate arguments in the absence of "argument or citations to the record or to authority"). We thus overrule Gonzales's fourth issue.

**ISSUES FIVE AND SIX—ABUSE OF DISCRETION IN DETERMINING ATTORNEY'S FEES**

Via his fifth issue, Gonzales asserts that the trial court abused its discretion when it awarded attorney's fees to Pounds for her tax attorneys in the absence of expert testimony or exhibits to establish the reasonableness and necessity of the fees. Further, he contends through his sixth issue that the trial court abused its discretion when it denied his request for attorney's fees despite the affirmance that he was owed money related to his equalization judgment and that the decree mandated that the fees be paid if default by Pounds resulted in legal action.

16

In Texas, each party generally must pay its own attorney's fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 483 (Tex. 2019) (citations omitted). However, in some circumstances, such as when authorized by statute or contract, a prevailing party may recover fees from the opposing party. *Brewer v. Lennox Hearth Products, LLC*, 601 S.W.3d 704, 721 n.71 (Tex. 2020). A trial court may award reasonable attorney's fees in a proceeding for enforcement of a divorce decree under section 9.014 of the Family Code. *See* TEX. FAM. CODE ANN. § 9.014 (West 2020). A party seeking attorney's fees "bears the burden of providing sufficient evidence" that the requested fees are both necessary and reasonable. *Rohrmoos Venture*, 578 S.W.3d at 498. The amount of attorney's fees awarded by the trial court in a bench trial is a matter subject to review under an abuse of discretion standard. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004). The trial court abuses its discretion if it awards expenses without legally and factually sufficient evidence that the attorney's fees were reasonable and necessary. *Id.*

In determining whether the evidence is legally sufficient, we must consider evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *Betancourt*, 2019 Tex. App. LEXIS 323, at *9 (citing *Bass v. Walker*, 99 S.W.3d 877, 883 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). When conducting our analysis, we must credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Betancourt*, 2019 Tex. App. LEXIS 323, at *9 (citation omitted). When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged

finding. *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). After considering all the evidence, we will set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Betancourt*, 2019 Tex. App. LEXIS 323, at *9 (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). In a nonjury trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Betancourt*, 2019 Tex. App. LEXIS 323, at *9 (citing *Tate v. Commodore Cty. Mut. Ins., Co.*, 767 S.W.2d 219, 224 (Tex. App.—Dallas 1989, writ denied)).

In reviewing the sufficiency of the attorney's fee evidence set forth here, the lodestar analysis applies, as it does in "any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." *Rohrmoos Venture*, 578 S.W.3d at 498. Under the lodestar method, the fact finder begins the attorney fee calculation by determining the reasonable hours worked multiplied by a reasonable hourly rate. *Id.* "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* Obtaining such evidence requires "itemizing specific tasks" and "the time required for those tasks." *Id.* at 495 (quoting *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) (per curiam)). The fees incurred or contracted for do not themselves establish reasonableness or necessity. *Rohrmoos Venture*, 578 S.W.3d at 495. The result of the lodestar calculation, on the other hand, is presumed to represent a reasonable and necessary attorney fee. *Id.* at 501.

In rare circumstances, the lodestar figure may be adjusted upward or downward, but only if specific evidence overcomes the presumption of reasonableness and shows that the adjustment is necessary to achieve a reasonable fee award. *Milliken v. Turoff*, No. 14-19-00761-CV, 2021 Tex. App. LEXIS 4188, at *6 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.) (citing *Rohrmoos Venture*, 578 S.W.3d at 500-01). The lodestar figure may not be adjusted based on considerations that are already inherently subsumed within the lodestar calculation. *Id.* (citation omitted). Considerations that the lodestar calculation already takes into account usually include, at a minimum, "the time and labor required," "the novelty and difficulty of the questions involved," "the skill required to perform the legal service properly," "the fee customarily charged in the locality for similar legal services," "the amount involved," "the experience, reputation, and ability of the lawyer or lawyers performing the services," "whether the fee is fixed or contingent on results obtained," "the uncertainty of collection before the legal services have been rendered," and "results obtained." *Milliken*, 2021 Tex. App. LEXIS 4188, at *7 (citations omitted).

As noted, the trial court did not hold a hearing regarding attorney's fees. Rather, it requested written submission of requests for those fees a week following the hearing. Included in the record are invoices setting forth the rate charged, the time spent, and a brief description of the tasks performed. However, this information is not a substitute for testimony explaining the reasonableness and necessity of those fees. *See, e.g., Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 319 (Tex. App.—Dallas 2009, pet. denied) (attorney testified the fees were reasonable and necessary). It is no better than "general, conclusory testimony" that is "devoid of any real substance." *Rohrmoos Venture*, 578

19

S.W.3d at 501-02. Such evidence has been found insufficient to support an award of attorney's fees. *Id.* *Compare In re A.M.*, No. 02-18-00412-CV, 2020 Tex. App. LEXIS 5334, at *10 (Tex. App.—Fort Worth June 4, 2020, no pet.) (mem. op.) (finding testimony of attorney regarding qualifications, hourly rate as fair and reasonable among family law practitioners in his area and experience, time spent on case, and travel and attendance at hearing sufficient to show attorney's fees were reasonable and necessary). Having considered the evidence in the light most favorable to the challenged finding and indulging every reasonable inference that would support the trial court's award of attorney's fees, we are of the opinion that the evidence is factually insufficient. Accordingly, we thus sustain Gonzales's fifth issue. In light of this ruling, we remand this issue to the trial court for further proceedings not inconsistent with this opinion.

We turn now to Gonzales's contention that the trial court erred in denying his request for attorney's fees. The record shows Pounds agreed she defaulted on the agreement set forth in the *Agreed Final Decree of Divorce* when she stopped making installment payments to Gonzales in March 2020. Gonzales testified that under the divorce decree, Pounds agreed to pay reasonable attorney's fees in the event he had to collect on that obligation. Further, Gonzales argues, the trial court found Gonzales was entitled to receive the outstanding amount of $200,285.28 from Pounds. As a result, Gonzales argued, he was entitled to receive the attorney's fees he requested.

However, Gonzales's request for attorney's fees suffers from the same deficiency as that of Pounds. While we agree that the *Agreed Final Decree of Divorce* provided for attorney's fees from Pounds to Gonzales in the event of Pounds's default, and thus is not of the same character as that of Pounds's request, the decree still called for payment of

*reasonable* fees. The record contains insufficient evidence that the requested fees were reasonable. As mentioned above, the trial court did not hold a hearing regarding attorney's fees and thus, there is insufficient testimony or other evidence that satisfies the requisites for an award of attorney's fees to Gonzales. *Rohrmoos Venture*, 578 S.W.3d at 484 ("When fee-shifting is authorized, whether by statute or contract, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees.") (citations omitted). Therefore, while we sustain Gonzales's sixth issue as to an award of attorney's fees, we also remand this issue to the trial court for further proceedings not inconsistent with this opinion.

### ISSUE SEVEN—ABUSE OF DISCRETION IN DENYING ALL RELIEF REQUESTED BY GONZALES

In his seventh issue, Gonzales argues the trial court abused its discretion when it denied all of the relief he requested in his enforcement pleadings despite the fact that Pounds stipulated she failed to pay the installment payments toward the equalization judgment as ordered.

As support for his argument, Gonzales points to several instances in which Pounds agreed she failed to make the payments as required and wholly admitted default. Further, he argues, Pounds "did not have pleadings on file requesting that the trial court determine the balance of the equalization judgment."

We agree the record shows Pounds admitted her default in paying the installments as required under the equalization judgment. However, that admission did not require the trial court to find in Gonzales's favor. Rather, the court was still within its discretion to determine what, if any, relief to award Gonzales. *See Greiner v. Jameson*, 865 S.W.3d

21

493, 498 (Tex. App.—Dallas 1993, writ denied) (trial court has broad discretion in enforcing its judgments). Reviewing the record, we cannot say the trial court acted without reference to any guiding rules or principles in denying the relief Gonzales requested. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 90 L. Ed. 2d 721, 106 S. Ct. 2279 (1986).

Furthermore, we cannot agree with Gonzales's contention that the trial court abused its discretion in denying his requested relief because Pounds did not have pleadings on file requesting the trial court determine the balance of the equalization judgment. Both parties made arguments concerning the balance of the equalization judgment and the trial court could not have made requested rulings concerning the judgment and other claims without determining that balance. Gonzales has not satisfied his burden to show how the trial court abused its discretion in doing so. We thus overrule issue seven.

## ISSUE EIGHT—ABUSE OF DISCRETION IN GRANTING TO POUNDS RELIEF NOT REQUESTED IN HER LIVE PLEADINGS

Finally, Gonzales argues through his last issue that the trial court abused its discretion by granting the relief Pounds requested in her proposed disposition of issues that was not included in her live pleadings. Gonzales complains that Pounds never asked the trial court to offset Gonzales's equalization judgment by an alleged balance owed to the IRS. Further, he contends, Pounds never pleaded in her motion that he failed to make a payment to the IRS relating to the 2017 tax liability. Instead, the only relief Pounds sought was as follows:

22

Violation 207. JOHN T. GONZALES refused to work with John Knox, CPA, in the preparation of the parties' 2017 tax return. This resulted in John Knox having to file two returns and charging the parties $2,107.50 for his services. JOHN T. GONZALES has not paid his half, which amounts to $1,053.75.

Violation 208. JOHN T. GONZALES did not have his 2017 tax return prepared by John Knox per the terms of the parties' decree.

10. Petitioner requests that for each violation alleged above, Respondent be held in contempt and fined up to $500.

11. Petitioner requests that, if the Court finds that any part of the order sought to be enforced is not specific enough to be enforced by contempt, the Court enter a clarifying order more clearly specifying the duties imposed on Respondent and giving Respondent a reasonable time within which to comply.

Therefore, Gonzales argues, the trial court's ruling in this matter served as a substantive change to the *Agreed Final Decree of Divorce*, violating section 157.421 of the Family Code,[8] and granted relief that was not specifically pleaded by Pounds.

The record indicates that the parties discussed the potential offsets to the judgment at length during the hearing. At no time did Gonzales raise the complaints he now brings. Rather, he argued to the trial court that those offsets were not valid. As such, we will look only to whether the trial court's ruling here served as a substantive change to the decree in violation of the Family Code. *See* TEX. R. APP. P. 33.1(a); *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170 (Tex. App.—Dallas 2009, no pet.) ("To preserve an error for appeal, a party's argument on appeal must comport with its argument in the trial court.").

We cannot agree with Gonzales's contention that each of the trial court's offsets against the equalization judgment substantively changed the agreement set forth in the

---

[8] TEX. FAM. CODE ANN. § 157.421 (West 2014) (providing for clarification of a non-specific order).

23

*Agreed Final Decree of Divorce.* The trial court found the equalization judgment owed by Pounds to Gonzales should be offset by $86,237.56 for Gonzales's one-half of the parties' 2017 tax liability, $30,572.00 for the penalties and interest accrued on the parties' 2017 federal income tax liability since June 15, 2019, $14,220.00 for Walters Gilbreath, PLLC's attorney's fees, $17,590.00 for Five Stone Tax Advisers' attorney's fees, and $3,818.25 for Gonzales's one-half of the fees owed to John Knox. All of those offsets were either items agreed to by the parties or properly determined by the trial court as discussed herein. The trial court did not change anything with regard to what Gonzales was entitled to receive, nor did it alter any agreement made by Gonzales and Pounds as to what each party would pay. Accordingly, we cannot find the trial court abused its discretion. We overrule Gonzales's final issue.

### CONCLUSION

We overrule Gonzales's second, fourth, seventh, and eighth issues; however, we sustain his first, third, fifth, and sixth issues. As such, the *Order on Motion for Enforcement* is reversed and this cause is remanded to the trial court for further proceedings consistent with our opinion herein.

Patrick A. Pirtle
Justice